## McLEMORE *vs.* PINKSTON.

[BILL IN EQUITY FOR FORECLOSURE OF MORTGAGE.]

1. *Discharge of mortgage.*—If the assignee of a mortgage invests in its purchase money furnished to him by the mortgagor, the mortgage is, *pro tanto*, discharged; and when such assignee seeks a foreclosure, the mortgagor is entitled to a credit for the money thus advanced by him.

2. *Admissibility of wife's declarations.*—The declarations of the wife, made contemporaneously with the delivery of money to another person, to the effect that it was her separate property and did not belong to her husband, are admissible evidence as a part of the *res gestæ; secus,* as to her declarations, made at the same time, to the effect that the money was the proceeds of her own labor, under an agreement with her husband that she might retain it as her own.

3. *Separate estate of wife in proceeds of her own labor.*—Although the husband

may, by an irrevocable gift to a trustee, or by some other clear and distinct act, create a separate estate for his wife in the proceeds of her own labor ; yet the declarations of the wife, contemporaneous with the delivery of money to another person, are not, of themselves, sufficient to establish such separate estate, as between the person to whom the money was delivered and a purchaser at execution sale against the husband.

APPEAL from the Chancery Court of Montgomery. Heard before the Hon. WADE KEYES.

THE bill in this case was filed by Moses McLemore, the appellant, and sought to foreclose a mortgage on several slaves, which was executed by James K. Pinkston on the 19th May, 1845, and the law-day of which was the 1st January, 1846. The mortgage was given to Graham & Rogers, to secure the payment of a promissory note for $1000; and was assigned by them, for valuable consideration, on the 20th March, 1847, to Solomon Thompson, whose administrator, on the 12th February, 1849, assigned the same, for valuable consideration, to McLemore. The slaves remained in the possession of the mortgagor until May, 1849, when they were seized and sold under execution against him.

The mortgagor and the several purchasers of the slaves at sheriff's sale were made defendants to the bill. A decree *pro confesso* was entered against Pinkston, the mortgagor. The other defendants answered; alleging that the money, with which the plaintiff purchased the mortgage, was furnished to him by Pinkston, through his wife; and that the transaction was intended to place the slaves out of the reach of Pinkston's creditors.

The proof adduced consisted of McLemore's answers to interrogatories propounded to him, in a suit at law brought in the name of Graham & Rogers, for his use, against the sheriff who levied on the slaves; and which were read in evidence by consent, "subject to all legal objections." In these answers the respondent stated, that he bought the note and mortgage for himself, and not at the instance of Pinkston or his wife; that he paid a portion of the purchase-money out of his own funds, and the balance (amounting to $1040) with money placed in his hands by

Mrs. Pinkston to indemnify him, according to her previous promise, for property purchased by him for her at a mortgage sale of some of her husband's property; that the money thus placed in his hands by Mrs. Pinkston consisted of silver coin and bank-bills of small denominations; that Pinkston was not present when the money was delivered; and that Mrs. Pinkston said, at the time of its delivery, that it belonged to her, and not to her husband,—that she had made it by her own labor, under an agreement with her husband that she might retain as her own all the money she could make by her garden and poultry. It was admitted, that the plaintiff, after paying the bills of exchange given for the property purchased at the mortgage sale, had sued the acceptor, and had recovered a judgment, which had been satisfied.

On final hearing, on pleadings and proof, the chancellor held, that the mortgagor was entitled to a credit for the money advanced by Mrs. Pinkston to the complainant; but ordered a foreclosure as to the balance paid by complainant for the mortgage. The complainant appeals from this decree, and assigns as error the allowance of the credits to the mortgagor.

THOS. WILLIAMS, for the appellant.

WATTS, JUDGE & JACKSON, contra.

WALKER, J.—The decree of the chancellor in this case contains no error of which the appellant can complain. The appellant bought the mortgage which he seeks to foreclose, and used in the purchase the sum of one thousand and forty dollars of money placed in his hands by the wife of the mortgagor. If this money was the money of the mortgagor, it can not be doubted that the mortgage was discharged, pro tanto. McLemore would be deemed a trustee for the mortgagor, for the money of the latter placed in his hands, and would be precluded from a foreclosure, to that extent. He could not be permitted, after the expiration of several years from the appropriation of the money, to say that it was placed in his hands to hold as an indemnity, when he has

reimbursed himself, by a recovery from another, for the loss against which the money was designed as an indemnity; and when it does not appear that either the mortgagor or his wife had ever objected to the appropriation made by him.

2. The views above expressed dispose of all the questions in this case, except the question whether the money which the mortgagor's wife placed in the hands of the appellant was the money of the mortgagor. The proof relied upon for the complainant, to show that the money was the separate estate of the mortgagor's wife, was, that a large portion of the money consisted of bills of a small denomination, and coin in small pieces, such as would likely be received from the sale of small articles in a city market; and that she declared that the money was not her husband's—that her husband had agreed that she might have all she could make from her garden and her poultry, and that the money handed to the appellant was derived from these sources. These declarations were legitimate evidence, only so far as they qualified and explained the act done; or, in other words, only so far as they came within the doctrine of *res gestæ*. So far as they asserted that the mortgagor's wife claimed the money as her own, and asserted her separate right to the money, the declarations may be considered. But so far as they constitute a statement of a contract with her husband, and a narrative of the past circumstances by which she procured the money, they were not admissible evidence; and, although brought before the court because they were recited in the answers to interrogatories by the plaintiff, which were given in evidence by the defendants, and although it may therefore have been proper for the court to have looked to it as evidence; yet we deem it altogether insufficient to prove the separate estate of the wife in the money.

3. While it is unquestionably the law, that the husband may give to the wife her earnings, and constitute them a separate estate in her, it is also clearly laid down by the law-books, that such an estate could only be created by a clear irrevocable gift to some person as a trustee, or by

some clear and distinct act of the husband; and that mere declarations of intention on the part of the husband can never constitute such an estate.—2 Brighton Husband and Wife, 202, 204; McLean v. Longlands, 5 Vesey, 79. The wife's earnings belong, *prima facie*, to her husband. Conceding that the money delivered to the appellant was the fruit of her earnings, the law intends, till the contrary is shown, that they are her husband's property. There is not the slightest evidence, aside from the declarations of the wife, that those earnings had been given up to her by her husband as a separate estate. If there was any other evidence attainable—if there existed other proof of a contract between the husband and wife as to her earnings; or if the wife had a separate estate, or any other source from which she might have derived the fund; or if the husband had for a long time recognized his wife's separate estate in her earnings, there ought to have been proof of those facts. There is nothing in this record from which we are authorized to infer their existence. The wife's declarations, standing alone and unsupported, are not, in our judgment, sufficient to establish a separate estate in the money, or to show that she was authorized to carry on any business on her own account.

The decree of the court below is affirmed.