## McLEMORE *vs.* NUCKOLLS.

[DETINUE FOR SLAVES, AGAINST SHERIFF.]

1. *Decree in chancery construed as authorizing issue of* fi. fa.—A decree in chancery, rendered on pleadings and proof, under a bill filed by the secured creditors, against the trustees in a deed of trust, charging them with waste, negligence, and misapplication of the assets; adjudging that the complainants are entitled to relief, and ordering the master to state an account of the several debts due to the complainants respectively, and the several amounts with which each trustee is chargeable, and to ascertain the *pro-rata* dividend of each creditor; and a subsequent decree, confirming the master's report,—though informal, are, when construed together and in connection with the bill and the master's report, equivalent to an order for the payment of the several sums of money ascertained to be due from each of the trustees to each of the creditors, and sufficient to authorize the issue of a *fi. fa.*

2. *Admissions of* cestui que trust *admissible against trustee.*—In an action brought by the trustee of a married woman, suing for her use, her admissions are competent evidence against him.

3. *Admissibility of bill in chancery as evidence in another suit.*—A bill in chancery, sworn to by the complainant, is competent evidence against him in another suit; and the fact that the complainant is a *feme covert*, suing by her next friend, does not vary the principle.

4. *Competency of distributee as witness for estate.*—On the death of a married woman, pending an action brought by her trustee for her use, a distributee of her estate is not a competent witness for the plaintiff.

5. *Admissibility of record as evidence.*—In detinue by the wife's trustee, suing for her use, to recover slaves which he had bought at a sale under mortgage executed by the husband, and which were afterwards seized and sold by the defendant, as sheriff, under execution against the husband; the defendant having introduced evidence tending to show, that the money, with which the plaintiff paid for the slaves, was furnished by the wife, and was in fact, as to the creditors of the husband, his property,—the record of a chancery suit, instituted by the plaintiff individually after his purchase of the slaves at the mortgage sale, for the purpose of foreclosing a mortgage on other slaves executed by the husband; to which suit the defendant was not a party, and in which the plaintiff was charged with certain moneys paid him by the wife, is not competent evidence for the plaintiff, "to show that creditors of the husband had already received the money paid by the wife to the plaintiff:" as to the defendant, it is *res inter alios acta.*

6. *Fraudulent conveyances; who are creditors or debtors.*—A trustee, under a deed of trust for the benefit of creditors, becomes their debtor from the time he receives money which, by the terms of the deed, ought to be paid over to them, without any subsequent violation of duty on his part, or demand made by them; and the fact that the creditors are non-residents, does not affect the principle.

7. *Abstract charge.*—A charge to the jury cannot be considered abstract, when the bill of exceptions recites evidence tending to show the existence of the facts on which it is predicated; and if the record fails to show such evidence, the appellate court will presume that a charge given was not abstract, when the bill of exceptions does not purport to set out all the evidence.

8. *Validity of voluntary conveyance.*—A contract between husband and wife, by which a separate estate is created in the wife in the future earnings of herself and her domestic servants, is void as to the existing creditors of the husband; and slaves purchased for her by a third person, and paid for with her earnings under such contract, are subject to the existing debts of the husband, like any other property purchased for her with the husband's money.

9. *Presumption in favor of judgment.*—When a charge is requested, which, on the facts hypothetically stated, asserts a correct legal proposition; but those facts might be met and avoided by proof of other facts, which would render the charge erroneous,—if the bill of exceptions does not purport to set out all the evidence, the appellate court will presume, in favor of the ruling of the primary court, that such additional facts were proved.

10. *Conclusiveness of admission under oath.*—When a bill in chancery, under oath, is offered in evidence against the complainant in a subsequent suit, he is not thereby estopped from denying its averments.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. S. D. HALE.

THIS action was brought by Moses McLemore, as trustee for Mrs. Matilda S. Pinkston, the wife of James K. Pinkston, and suing for her use, against George B. Nuckolls, to recover a negro woman, named Easter, together with damages for her detention; and was commenced on the 10th January, 1854. The defendant pleaded *non detinet*, and issue was joined on that plea. It appeared on the trial, from the evidence adduced by the plaintiff, that the slave originally belonged to said James K. Pinkston, who, on the 2d December, 1844, mortgaged her, with two other slaves, to the Branch Bank at Montgomery, to secure a *bona-fide* debt which he owed to said bank. The mortgage contained a power of sale, under which the slaves were sold on the 5th February, 1849, and were bid off at the sale by the plaintiff, at the price off $1325. The assistant bank-commissioner, by whom the sale was made, executed a bill of sale for the slaves to the plaintiff; and the latter gave

his bill of exchange, accepted by Ann Harper, dated the 5th February, 1850, (?) and payable on the 1st January next after date, for the price; which bill, not being paid at maturity, was renewed by another bill on Ann Harper, and the latter bill was afterwards paid by plaintiff. On the 9th February, 1849, the plaintiff executed a bill of sale for said slaves, at the specified price of $1422 17, to William J. McLemore, who, on the same day, and at the same specified price, reconveyed them to the plaintiff, "in trust for the sole and separate use of Mrs. Matilda S. Pinkston, and to be disposed of as she may direct, by will or otherwise, at her death, amongst her children then living."

In the latter part of December, 1853, or about the 1st January, 1854, the defendant, as sheriff of Macon county, levied an execution on the slave now in controversy, as the property of James K. Pinkston; and sold said slave, under said levy, on the 1st Monday in February, 1854. This execution was issued on a decree in a chancery cause in which Brewster, Solomon & Co. and others were plaintiffs, and said Pinkston and one Whitesides were defendants. The bill in that case was filed by the complainants, on behalf of themselves and certain other creditors of C. D. McCall & Co., who were secured by a deed of trust executed by said McCall & Co. to said Pinkston and Whitesides as trustees; charged said trustees with waste, negligence, and misapplication of the assets which had come to their hands, and sought an account and settlement of the trust. The deed of trust was dated and executed on the 3d February, 1838; and conveyed to said trustees a large stock of goods, with the outstanding notes and accounts, and all the other personal assets belonging to said McCall & Co. as partners, in trust to sell, on such terms as the said trustees might deem expedient, and, after paying the expenses incurred in the execution of the deed, to apply the residue of the proceeds, first, to the payment of the debts due from said McCall & Co. to certain creditors residing in New York, and the balance to certain other specified creditors. The trustees accepted the trust, en-

tered on the execution of the duties thereby imposed upon them, and sold the goods, &c., conveyed to them. At the July term, 1847, on hearing on pleadings and proof, the chancellor held, that the complainants were entitled to relief, and ordered an account to be taken by the master, to ascertain the amount of the trust funds which had come to the hands of each of the defendants, the amount due to each one of the complainants from McCall & Co., and their *pro-rata* dividend of the funds with which the defendants were chargeable ; " reserving the question of costs, and all other questions, for further directions on the coming in of the report." The master reported, at the July term, 1849, that there was of the trust funds the sum of $4,830 27 in the hands of Pinkston, and $4,906 33 in the hands of Whitesides ; and also ascertained the *pro-rata* dividend to which each creditor was entitled of these amounts. At the same term, the chancellor confirmed the master's report, and adjudged the costs of suit against the defendants. The execution which, as above stated, the defendant levied on the slave in controversy, was against Pinkston alone, and commanded the sheriff to make the sum of $4,830 27, which Brewster, Solomon & Co. and other creditors, specified by name, " recovered of him on the 5th July, 1847, by a decree of the chancery court," &c.

On the trial, as appears from the bill of exceptions, after the plaintiff had proved his own title, as above stated, the seizure of the slave by the defendant, her value, and the value of her hire, the defendant offered in evidence the deed of trust from McCall & Co. to Pinkston and Whitesides ; proved the said trustees' acceptance of the trust ; their sale of the goods, &c. ; and then offered in evidence the record of the said chancery suit, the execution, sheriff's endorsement thereon, &c. " The plaintiff objected to the introduction of the proceedings in said chancery suit, on the ground that there was no decree in said cause ; and to said execution, on the ground that there was not such a decree as would sustain it, and that said execution was void." The court overruled these objections, and admitted the evidence ; to which the plaintiff excepted.

The defendant then offered in evidence a transcript, duly certified, of a bill in chancery filed by Mrs. Pinkston, suing by her next friend, against her husband, James K. Pinkston, Moses McLemore, and Rebecca Smith; accompanied by proof that the slave Easter, or Esther, therein mentioned, was the slave here in controversy. This bill was filed on the 8th January, 1852, and was sworn to by Mrs. Pinkston. It sought to enjoin said McLemore and Rebecca Smith from further proceedings at law, to subject certain slaves and other personal property, in which the complainant claimed a separate estate, to the satisfaction of their several judgments against said James K. Pinkston. It alleged, in substance, that said Pinkston, in 1839 or 1840, placed four domestic servants under the sole control of the complainant, under an agreement that, after defraying all the family expenses, the balance of the proceeds of their labor and her own might be retained by her for her sole and separate use and benefit; that under this contract, by the exercise of industry and economy, she was enabled to realize a sum which, after paying all the current family expenses, and assisting her husband in the payment of his debts and the education of their children, amounted, in 1850, to over $2,000; that in February, 1849, said McLemore purchased for her, at a mortgage sale, the slave Easter and two others, at the price of $1325, which amount she paid to him out of the funds belonging to her separate estate under the said contract between herself and her husband.—See the case reported in 31 Ala. 308. The plaintiff objected to the admission of this transcript, on the following grounds: "1st, because it was only the admission of a *feme covert*, and was therefore incompetent; 2d, because Pinkston's title was only equitable, and was not the subject of litigation, and, consequently, was not an issue before the jury; and, 3d, because Mrs. Pinkston was not a party to the suit, and her admissions were not evidence." The court overruled all these objections, and admitted the transcript; and the plaintiff excepted.

It was admitted, that Mrs. Pinkston died, in July, 1857,

in Mississippi, where she and her husband then resided. The plaintiff offered said James K. Pinkston, her husband, as a witness. The defendant objected to his competency, on the ground that, by the laws of Mississippi, he was one of the distributees of her estate; and read in evidence the statutes of Mississippi, regulating the distribution of intes- tates' estates; and it was agreed, that these statutes might be read in this court, on appeal, from the Mississippi Code, as if they had been incorporated in the bill of exceptions. The court sustained the objection to the competency of the witness, and excluded him; to which the plaintiff excepted.

It was admitted, that the plaintiff had collected about $2,000, by suit, from Mrs. Ann Harper, as the acceptor of the bill of exchange given, as above stated, for the three slaves bought by him at the mortgage sale. "To prove that the creditors of James K. Pinkston had already re- ceived from the plaintiff the money paid to him by Mrs. Pinkston," the plaintiff offered in evidence the record of a chancery suit, instituted by himself, individually, against said James K. Pinkston and others. The bill in that case was filed for the purpose of foreclosing a mortgage on sev- eral slaves, which was executed by said James K. Pinkston, on the 19th May, 1845, and the law-day of which was the 1st January, 1846. The mortgage was given to Graham & Rogers, to secure the payment of a promissory note for $1,000; and was assigned by them, on the 20th March, 1847, for valuable consideration, to Solomon Thompson, whose administrator assigned the same, on the 12th Feb- ruary, 1849, for valuable consideration, to said McLemore. In May, 1849, the slaves were sold under executions against said Pinkston; and the several purchasers at the sale were made defendants to the bill. A decree *pro confesso* was en- tered against Pinkston. The other defendants answered; alleging that the money, with which McLemore purchased the mortgage, was furnished to him by Pinkston, through his wife, and that the transaction was intended to place the slaves beyond the reach of Pinkston's creditors. On the final hearing, on pleadings and proof, the chancellor held,

that the mortgagor was entitled to a credit for the money advanced by Mrs. Pinkston to McLemore, but ordered a foreclosure as to the balance of the purchase-money paid by McLemore ; and his decree was affirmed by this court, on appeal, at its June term, 1857.—See the case reported in 31 Ala. 266. On motion of the defendant, the court excluded the record, and the plaintiff excepted.

The court charged the jury, " that from the time Pinkston received any money under the assignment from McCall & Co., which was to be applied to the payment of the debts specified in the schedule, he became the debtor of those creditors, and the fact that they resided in New York made no difference ; and that if he thus became indebted to them, and the slave sued for was transferred or conveyed by him to his wife, under the agreement set forth in the bill in chancery filed by her against him and others, or was bought by McLemore, for her separate use, with the earnings derived by her from the property which she received from said Pinkston under said agreement, and said agreement was made after said Pinkston became so indebted, then the said slave would be liable to the payment of a judgment or decree obtained by any such creditors against said Pinkston, founded on said indebtedness."' The plaintiff excepted to this charge, and requested the court to instruct the jury, " that if the creditors under the assignment resided in New York, Pinkston, the trustee, who resided in Montgomery, where the assignment was made and the business transacted, was not in default for not paying them, until they demanded payment of him, and was not their debtor, in the sense the law requires, until he failed to pay on demand." The court refused to give this charge, and the plaintiff excepted to its refusal.

The plaintiff also requested the following charges in writing :

" 1. If the jury believe, from the testimony, that the slave sued for belonged to James K. Pinkston in December, 1844.; that said Pinkston, on the 2d December, 1844, executed in good faith the mortgage which had been read in

evidence, to secure the payment of the debts therein described; that such debts were due and owing by him, in good faith, to the Branch Bank at Montgomery; that afterwards, said debts being unpaid, said slave was sold by the assistant bank-commissioner, under said mortgage, to pay said debts, and was purchased at said sale by said McLemore; that said McLemore, on the 9th February, 1849, executed to William J. McLemore the bill of sale which had been read in evidence; that said William J. McLemore, on the 9th February, 1849, executed to said plaintiff the other bill of sale, or deed for said slave, which had also been read in evidence; that said plaintiff, for the purchase-money of said slave, gave said bank his bill of exchange, accepted by Ann Harper, and afterwards paid said bill with his own money, and not with the money of James K. Pinkston; and that he has not been repaid by said James K. Pinkston, or with money of said Pinkston, but by Mrs. Ann Harper,—then the plaintiff is entitled to a verdict, if the defendant was in the posssssion of said slave at the commencement of this suit.

" 2. If the plaintiff purchased said slave, at a sale made by the Branch Bank at Montgomery, under the mortgage executed by James K. Pinkston to secure debts due to said bank in good faith, and paid the purchase-money from his own funds, and did not use the money of James K. Pinkston for that purpose, and was not repaid by said Pinkston, nor with said Pinkston's money, but with the money or funds of Mrs. Harper,—then the plaintiff is entitled to a verdict, if the jury further believe that the deed of the bank to plaintiff, of February 5, 1849, was then executed to him, and that the bill of sale from him to William J. McLemore, and the deed from said William J. McLemore to him, both dated February 9, 1849, were severally executed at the time, and that the defendant had the possession of said slave at the commencement of the suit.

" 3. If plaintiff purchased said slave, at a sale made by the Branch Bank at Montgomery, under the mortgage executed by Pinkston, which was read in evidence, and

which was honestly made to secure debts due from him to said bank in good faith, and paid the purchase-money with his own funds, and not with the money of Pinkston, (although he may have purchased said slave for the sole and separate use of Mrs. Pinkston, and at her request; and although Mrs. Pinkston may have placed in his hands, to buy said slave, money which belonged to her said husband, but which he used in some other way for her;) and if he has not been repaid the money which he thus paid for said slave, by said Pinkston, or with money or funds belonging to said Pinkston; and if the several instruments read in evidence—the deed from the bank to McLemore, the deed from him to William J. McLemore, and the deed from William J. McLemore back to him—were executed as they purport to be; and if the defendant was in possession of said slave when this suit was commenced,—then the plaintiff is entitled to a verdict.

"4. If Mrs. Pinkston placed money in the plaintiff's hands, for the purpose of buying said slave for her, for her sole and separate use, which money was, in law, the money of her said husband; and plaintiff, instead of using said money in the payment for said slave, in fact paid for her with his own money, and not with the money or funds of Pinkston; and he has never been repaid, either by Pinkston or Mrs. Pinkston, or with Pinkston's money, for the money thus paid out by him; and if said mortgage by Pinkston to the bank was executed, as it purported to be, in good faith, to secure the debts therein stated; and said debts were due by him, in good faith, to said bank; and the slaves therein mentioned, including the slave now in suit, were sold under said mortgage, in February, 1849; and were bought at said sale, as aforesaid, by Moses McLemore; and the several instruments read in evidence —the deed from the bank to Moses McLemore, and from him to William J. McLemore, and from him back to Moses McLemore—were executed at the time they purport to have been; and said slave was in the defendant's possession at the commencement of this suit,—then the plaintiff is entitled to a verdict.

"5. Although Mrs. Pinkston may have made statements in a bill in chancery, which were sworn to by her, this does not preclude her from showing that she was mistaken : it is only an admission, and its being sworn to only raises a stronger presumption of the truth of the statement, or of her belief in its truth, but does not conclusively establish the truth of such statement, if there is sufficient evidence before the jury to satisfy them that she was mistaken, either as to the truth of the statement, or as to the inferences which she or others might draw from it.

"6. That the order, judgment, or decree, made in the case of Brewster, Solomon & Co. and others against Pinkston and Whitesides, which had been read in evidence, is not such a final order or decree that an execution could issue on it, except for costs.

"7. That the execution issued in said cause is void.

"8. That the decree in said cause cannot be looked to or regarded by the jury for any purpose, and the execution issued on it cannot be looked to or regarded by them for any purpose."

The court refused each of these charges, and the plaintiff excepted to their refusal.

The court charged the jury, at the request of the defendant, "that if they believed, from the testimony, that the assignment read in evidence was executed at the time of its date, and that the debts mentioned in it were real and *bona fide*, and that said Pinkston accepted the assignment, and took possession of all or part of the goods and notes assigned, and sold the goods so taken possession of in 1838, and failed or neglected to pay over the money received from the sale to the creditors who were entitled to it under said assignment ; and if they believe, also, that the decree read in evidence was based upon such failure or neglect, and that an execution was issued on said decree, and was levied by the defendant, as sheriff, on the slave sued for ; and that said slave was sold by the defendant, under said levy ; and that said Pinkston, in 1839 or 1840, made with his said wife the contract stated in the bill in

chancery in which she was complainant, which had been read in evidence by the defendant; and that said slave was purchased with the earnings of Mrs. Pinkston, derived from said contract,—then said slave was subject to the execution issued on said decree in chancery against said Pinkston." The plaintiff excepted to the giving of this charge.

All the rulings of the court to which, as above stated, exceptions were reserved by the plaintiff, are now assigned as error.

THOS. WILLIAMS, and JNO. A. ELMORE, for appellant.
WATTS, JUDGE & JACKSON, contra.

A. J. WALKER, C. J.—It was objected in the circuit court, that there was no decree for the payment of money, upon which the *fieri facias* levied by the defendant could issue. We think the decree of the chancellor in which he makes a reference to the register, and the decree confirming the register's report, when construed together, and in reference to the bill and to the report confirmed, amount to an order for the payment of the several sums of money reported by the register to be due by the defendants severally to the respective creditors, notwithstanding the gross informality of the decrees.—*Huffaker v. Boring*, 8 Ala. 88; *Harland v. Eastland*, Hardin, 500 ; *Honore v. Colmesnil*, 1 J. J. Marsh. 506.

[2-3.] Mrs. Pinkston being the party really interested, and for whose benefit the suit was brought, as shown both by the complaint and the evidence, her admissions were competent evidence in favor of the adverse party. The bill in chancery, which was given in evidence, was sworn to by her, and was, therefore, not the mere allegation of counsel, but a statement of facts, admissible against her. *Durden v. Cleaveland*, 4 Ala. 225. Her coverture at the time when the affidavit was made of the truth of her separate bill, does not exempt her from the operation of the rule, that declarations are evidence against parties making them. The separate answer of a *feme covert*, made under

oath by her, is admissible against her; and so also must be her separate bill, when sworn to by her.—1 Dan. Ch. Pl. & Pr. 196. . For these reasons, there was no error in the admission of Mrs. Pinkston's bill in evidence against the plaintiff in this suit.

[4.] It has been decided in this State, that the husband of a distributee of an estate would not be a competent witness for the contestants of a will, where the interest of such distributee would be enlarged by the setting aside of the will.—*Walker v. Walker*, 34 Ala. 469. Of course, the distributee would, under like circumstances, be an incompetent witness. A recovery by the plaintiff, in this case, would have precisely the same effect, in swelling the distributive share of the distributees of Mrs. Pinkston's estate, as the setting aside of the will in the case cited would have had. We therefore decide, upon the authority of that case, that a distributee of the estate of Mrs. Pinkston is an incompetent witness for the plaintiff; and that there was no error in the refusal to permit James K. Pinkston, who was a distributee, to testify.

[5.] The argument, upon which the defense in this case rested, was, that the slave in controversy was sold under a mortgage executed by James K. Pinkston; that the slave was bought at that sale by Moses McLemore; that Moses McLemore conveyed the slave to Wm. J. McLemore, who conveyed her back to Moses McLemore, in trust for the separate use of Mrs. Pinkston, the wife of James K. Pinkston; that the money, with which Moses McLemore bought and paid for the slave, was furnished by Mrs. Pinkston; that this money, as to the creditors of James K. Pinkston, was, upon the principle settled in *Pinkston v. McLemore*, (31 Ala. 308,) the property of the husband; that the complicated transaction, which resulted in a conveyance to Mrs. Pinkston, was a contrivance to vest her with the title; and that the whole transaction amounted to nothing more than a gift by James K. Pinkston to his wife, which was void as to the debts under which the property was sold, because they were existing at the time of that transaction.

43

The plaintiff offered to introduce evidence, for the purpose of showing that the money received by Moses McLemore from Mrs. Pinkston was not appropriated to the payment for the slave, but in a different manner. We do not say that the purpose, for which the evidence was offered, was illegal; but we think the means by which it was proposed to make the proof, was wholly inadmissible. The chancery record, which was offered in evidence for that purpose, was *res inter alios acta* as to the defendant, and, therefore, not evidence against him for any purpose.

[6.] One of the objections made to the first charge given by the court, is, that a trustee, under a deed of trust made for the benefit of creditors residing in another State, does not become the debtor of the creditors, when he receives moneys which, by the terms of the deed, were to be paid over to such creditors; but that he could only become the debtor of the creditors, after a violation by the trustee of his duties, or after demand made by the creditors. This question is conclusively settled, adversely to the appellant who makes the objection, by the decisions of this court in the cases of *Foot v. Cobb*, (18 Ala. 585,) and *Gannard v. Eslava*, (20 Ala. 732.) In the former of those cases, it was decided, that an agent, who has sold the slave of his principal on a credit, and promised to pay the purchase-money, when collected, to his principal, is, within the meaning of the statute of frauds, a debtor; and in the latter, that the grantor in a deed containing a general covenant of warranty, there being an outstanding adverse title, was a debtor of the grantee, within the meaning of the same statute. See, also, *Hitchcock v. Lukens*, 8 Por. 333. The fact that the creditors resided in another State, can make no difference. No distinction can be predicated upon the residence of the creditors.

[7.] We do not think this charge obnoxious to any of the other objections made to it. It is certainly not abstract. The evidence, according to the bill of exceptions, certainly conduced to show, that Pinkston, the trustee, received money belonging to the trust within three months

after the date of the deed of trust, (Feb. 3, 1838;) and the bill in chancery of Mrs. Pinkston shows, that the agreement between her and her husband was made in 1839 or '40 ; so that the bill of exceptions positively indicates a tendency of evidence to support the proposition, that the indebtedness of Pinkston existed before the agreement between himself and his wife was made. If, however, this were not the case, we would presume, in favor of the charge, that it was not abstract ; there being nothing in the record to the contrary.

[8.] In the case of *Pinkston v. McLemore*, (31 Ala. 308,) it is distinctly decided, that the contract between Pinkston and his wife was void, as to the existing creditors of the former ; and that the earnings of the wife, and the servants put under her control, under that contract, were, as to such existing creditors, the property of the husband. It follows, that if the slave in controversy was bought by McLemore, the plaintiff, for the separate use of Mrs. Pinkston, with her earnings accruing under the agreement with her husband, then the transaction was, as to those who were the husband's creditors at the time of such agreement, a purchase of the property for the wife, with the husband's money. The property so purchased would, as to creditors, belong to the husband, and be liable to their demands. We understand the charge to assert nothing more than this.

[9.] The plaintiff asked eight charges, which were severally refused. The first four of those charges affirm the plaintiff's right to a verdict, if the jury believe certain facts therein specified. The facts specified in each one of those charges, whatever might be their legal effect, if not met and avoided by other facts, certainly do not rise to an irresistible inference in favor of the plaintiff's right to a recovery. For example : if it be conceded that, upon the facts presented in each one of those several charges, a title, good as to the creditors of Pinkston, would have vested in the plaintiff; yet no right to a recovery would result, upon those facts, if it was shown in reply, that such title had

been, before the levy by the defendant, divested in some legal manner, and vested in Pinkston, the defendant in execution. The bill of exceptions does not profess to set out all the evidence, and we can not presume that it does. *S. M. Ins. Co. v. Holcombe*, 35 Ala. 327. As the facts upon which the plaintiff, in the charges asked, predicated his claim to a verdict, were of such a nature that their legal effect would be susceptible of being avoided by other facts; and as the bill of exceptions does not inform us whether or not such other facts existed, we can not decide that the refusal of those charges was erroneous. We can not presume, for the purpose of attributing error to the court, the non-existence of the facts requisite to justify those refusals.—*Phillips v. Petcet*, 35 Ala. 696; *Rupert v. Elston*, ib. 79.; *Wyatt v. Stewart*, 34 Ala. 716; *Duckworth v. Butler*, 31 Ala. 164.

[10.] In refusing the 'fifth charge requested, the court erred. A party is not estopped from denying the averments of a bill in chancery, although sworn to, when they are offered in evidence, in an independent suit, against such party. The charge was not abstract; for the bill of exceptions sets forth evidence of a payment for the slave, in a bill of exchange accepted by Mrs. Harper, which had been collected by McLemore from the acceptor.

From what has already been said, as to the admissibility of the execution in evidence, it results that the 6th, 7th, and 8th charges requested, were properly refused.

There was no error in giving the charge which was asked by the defendant. The reasons are indicated in our remarks as to the first charge given.

Reversed and remanded.