ELLIOTT, Receiver, vs. BENTLY and others.

17    591
56 LRA  741

The earnings of a married woman during her coverture, are the property of her husband; and he can make no contract with her in relation to them.

A married woman, during several years, with the consent of her husband, earned moneys as a teacher of music, intending to retain them as her own, but from time to time loaned them to her husband to be used in his business; and he, to repay her, caused certain notes executed to him for real estate sold by him, to be delivered to one C, in trust for her, and she afterwards obtained possession of the notes and transferred them, without any consideration, to W., to be held for her.   An execution against the property of the husband having been returned unsatisfied, and a receiver having been appointed on supplemental proceedings: *Held*, that the receiver was entitled, in an action for that purpose, to reduce said notes to his possession, and apply them to the payment of the husband's debts.

APPEAL from the Circuit Court for *Milwaukee* County.
On the 18th of May, 1860, one Kern recovered a judgment

against the defendant *Henry Bently* for $213.46, on which execution was issued to the sheriff of Milwaukee county (where said *Henry* resided), and was returned unsatisfied.   Upon supplemental proceedings, *Elliott* was appointed receiver of all the goods and chattels of said *Henry*, and duly qualified and entered upon that office.   This action is brought by him, as such receiver, against said *Henry* and his wife *Helen*, *George Burnham* and *James Wormsley*, to compel a delivery to the plaintiff of certain notes (amounting to $1,480) made by *Burnham* to *Henry Bently* or bearer, and alleged to be held by *Wormsley* for the benefit of *Helen Bently* ; the complaint alleging that the transfer of said notes to *Wormsley* was made in fraud of the creditors of said *Henry*.   The complaint also asked for an injunctional order restraining *Wormsley*, &c. from disposing of said notes until the further order of the court ; and the order was granted.

The answer of the defendants *Henry* and *Helen Bently* alleged the following facts :   *In* 1848 *said Helen loaned to her husband* $250, and in 1853 the further sum of $300, both from her separate property received from her father's estate. *She also purchased with her own funds, likewise received from her father's estate, a piano for* $375.   She also, at various times between 1853 and 1860, loaned to her husband sums earned by her in teaching music.   About the 1st of May, 1860, she had an accounting with her husband, and there was found due to her from him, for moneys so loaned, $1575.   All these loans were made upon an understanding and agreement between the parties that the moneys were to be treated as the separate funds of said *Helen*, and that she should be secured  therefor upon the real estate which *Henry  Bently* then owned.   On the 10th of April, 1860, *Henry Bently* sold and conveyed certain real estate to the defendant *Burnham*, and for a portion of the purchase price thereof *Burnham*, on the same day, executed the notes in controversy.   Said *Helen* refused to execute the deed to *Burnham* unless her husband would secure her for the mon-

eys so loaned · to him, and he agreed that she should be secured from the avails arising from the sale of said real estate, and she thereupon joined in the execution  In pursuance of this agreement, the notes executed by *Burnham* were placed in the hands of one Crugom as the property of said *Helen*, said *Henry* disclaiming any interest in them or control over them.  The notes were subsequently placed by said *Helen* in the hands of the defendant *Wormsley*, in good faith for the purpose of securing her as aforesaid, and not for the purpose of hindering Kern in the collection of his judgment.

On the trial, the court found the facts substantially as above alleged, except those printed in italics, as to which there was no finding.  The evidence showed that the piano above mentioned was paid for by *Henry Bently*, and that the balance of $1575, alleged to be due from him to his wife, was obtained by deducting the cost of said piano ($375) from the gross amount of moneys obtained by him from her.  As a conclusion of law, the court held that the notes, when delivered by *Henry Bently* to Crugom for *Helen Bently*, became the property of said *Helen*, and were not subject to the debts of her husband.  The injunctional order was therefore vacated, and judgment rendered for the defendants; from which the plaintiff appealed.

Exceptions were filed to the finding of facts by the court; but as the decision of this court does not turn upon the questions thus raised, the evidence is not here stated.

*E. Mariner*, for appellant.

*G. A. Starkweather*, for respondents:

1. Under the act of 1850 for the protection of married women, which is precisely like the N. Y. statutes on that subject, a married woman can take proceedings in equity to secure herself her separate personal property which the husband has in his possession, and which she loaned to him to use in conducting his business.  *Devin v. Devin*, 17 How. Pr. R., 514; *Sickle v. Sickle*, 8 id., 265.  2. A wife may contract with her

husband, even by parol, for a transfer from him to her, provided it be for a *bona fide* consideration. 2 Kent's Comm., 166; *Garlick v. Strong*, 3 Paige, 440; *Babcock v. Eckler*, 24 N. Y., 623. 3. In the absence of any agreement to the contrary, the earnings of a wife may belong to her husband. In this case the husband permitted the wife to receive what she earned by teaching music. The money thus earned was paid to her, and she loaned it to her husband, he promising to return it to her or secure her to the amount; and this arrangement was long before the husband's indebtedness. 4 Wis., 112, 118; 3 P. Wms., 337–8. Intentional fraud must appear, to authorize the court to interpose and declare the transaction void. 8 Paige, 161, 163.

*By the Court*, DIXON, C. J. It is somewhat remarkable, among the many beneficent changes recently effected by legislation for the welfare and protection of married women, that the legislature should have omitted to secure to the wife the rewards of her individual skill and labor. The real and personal property owned by her at the time of marriage, or which she may receive after marriage, by gift, grant, devise or bequest, from any person other than her husband, and the rents, issues and profits thereof, are zealously guarded and secured to her sole and separate use. But her earnings, the proceeds of her personal labor beyond that which is required in the discharge of the ordinary duties of the household and family, and which are most frequently the married woman's only means of acquiring property for the future support and comfort of herself and children, are left to the severe and rigorous rules of the common law, except when the husband, from drunkenness, profligacy, or other cause, shall neglect or refuse to provide for her present support, or the present support and education of her children. R. S., ch. 95, sec. 4. This seems contrary to the spirit of modern legislation upon the subject. If the property and its profits deserve protection from the acts

or rapacity of the husband or his creditors, the earnings of the indigent but frugal and industrious wife and mother would seem to deserve it still more. In this case it appears that *Mrs. Bently* had, with the assent of her husband, during a period of several years, earned considerable sums of money as a teacher of music, intending to retain them as her own. She had, however, from time to time, loaned the money in small amounts to her husband, to be used in his business, until at last he was in possession of all. Finally, to repay her, he caused the notes in question, which were executed to him by the defendant *Burnham*, and which the plaintiff, as receiver, now seeks to reduce to his possession, and to subject them to the payment of the husband's debts, to be delivered to one Crugom for the use of *Mrs. Bently*. Crugom afterwards delivered the notes to her, and she then transferred them, without consideration, to the defendant *Wormsley* for safe keeping, and *Wormsley* now has them in his possession. Had the money advanced been the proceeds of *Mrs. Bently's* separate property, or the rents or profits, it is not improbable, in the absence of all fraud or circumstances of unfairness, that she would have been allowed to retain it or the notes received in payment. It seems harsh and unreasonable that she should not have the same rights now, but by law we are constrained to say that she has not. The rule of the common law, still unaffected by statute, so far as this case is concerned, admits of no doubt. By that rule the legal existence of the wife, as a distinct person, is, for most purposes, merged in that of the husband, and the marriage is an absolute gift to the husband of the goods, personal chattels and estate of which the wife was actually and beneficially possessed at the time in her own right, *and of such other goods and personal chattels as may come to her during the marriage.* This is the language of all the writers and authorities upon the subject, and the rule remaining unchanged as to her earnings, it follows that they are the absolute and unqualified property of the husband. 1 Bright on Husband & Wife,

34; 1 Roper, 169 (30 Law Lib., 109); 1 Macqueen, 18 (57 Law Lib.,28); 2 Story's Eq., § 1367. Even a court of equity will not protect the earnings of a separate business carried on by the wife with the mere assent of the husband, against the husband's creditors. It will only protect them against him. See *Todd vs. Lee*, 15 Wis., 365, and the authorities cited. The money earned by *Mrs. Bently* being her husband's, and her existence as a distinct person being so far wholly unknown to the law, there could be no contract between him and her in relation to it, and no legal obligation could arise or be created on his part to return it. It was his, and as such liable for the payment of his debts. The same is true of the notes. *Mrs. Bently* has no legal claim to them as against his creditors.

The question of fraud in the transfer of the notes, the only one argued by counsel, is not discussed, because the foregoing view of the rights of *Mrs. Bently*, who alone contests the claim of the plaintiff, renders such discussion unnecessary.

It likewise appears that $300 of the money advanced by *Mrs. Bently* to her husband was received from the estate of her father; but as that was more than repaid in the purchase of the piano, which was paid for by her husband, and as his creditors as yet make no claim to the piano, an examination of that branch of the case is also unnecessary.

The judgment of the circuit court must be reversed, and the cause remanded for further proceedings according to law.