# Carleton *v.* Rivers *et al.*

*Bill in Equity to protect Separate Estate, and to establish Resulting Trust, &c.*

1. *Resulting trust; what indispensable element of.*—No resulting trust in lands purchased by a trustee, can arise in favor of the *cestui que trust*, unless coeval with the purchase and acquisition of title, the trust funds formed the consideration, while the title passed to the trustee individually.

2. *Same.*—If a trustee for his own gain, and on his own credit, purchases and acquires title to land, and afterwards pays the notes given for the purchase with trust funds, no resulting trust is thereby fastened on the legal title.

3. *Earnings of wife; right of husband to; how affected by statutes creating the wife's statutory estate.*—The statutes creating the statutory estate of the wife, have not changed the common law rule, which made the wife's saving the absolute property of the husband.

4. *Same; what not sufficient to show gift of, to wife.*—Where the husband's pursuits kept him from home during the greater part of several years, during which time the management of the domestic affairs, including the supervision of the farm on which they resided, devolved on the wife, and she, by prudence and economy, derived profits from cultivating the farm, from which were realized money, the husband afterwards spent in paying a debt for lands purchased by him,—this is not sufficient to show a gift of such earnings to the wife, or that she had a separate estate in them.

APPEAL from Chancery Court of Clarke.
Heard before Hon. A. W. DILLARD.

[Carleton v. Rivers et al.]

The appellee, Rhoda Rivers, filed this bill against Carleton and others, seeking, in effect, to fasten a resulting trust on certain lands which her deceased husband had purchased, taking a conveyance direct to himself; the purchase money of which, she alleged, he paid with moneys of her separate estate. The husband afterwards conveyed the lands by deed of trust, and they were subsequently sold to pay the debts secured, in pursuance of a power contained in the deed. Carleton, who purchased at the sale, and others claiming through him, are made defendants.

The case was before this court at the June term, 1873, on appeal from a decree dismissing the bill on demurrer, and is reported as *Rivers v. Carleton*, 50 Ala. 40.

Her husband, who had been dead for several years when the bill was filed, had been, for some twenty years previous, engaged in "steamboating," and was seldom at home; paying only occasional visits. His wife managed and controlled the farm on which the family lived, and with the aid of his children, and some negroes belonging to the husband, cultivated crops thereon. She was an industrious and thrifty woman, and by her prudent management and skill, was enabled to save a considerable sum of money. The husband purchased the land mentioned in the bill, "the wife not being known in the trade," giving a draft on a mercantile firm in Mobile for a part of the purchase money, and his note for the remainder, at the same time taking a conveyance directly to himself. The draft was accepted and paid on his account. There was testimony to show that the debt due on account of the acceptance of the draft, and the note, were paid with the money which the wife had saved from the crops raised on the farm.

The chancellor decreed that the lands mentioned in the bill were the separate estate of complainant, and not subject to the debts of her late husband; that the mortgage, or deed of trust, executed by him, be annulled so far as affected complainant's rights, and that all title of purchasers under the sale made under the provisions of the trust deed, be devested out of them and invested in complainant.

This decree is now assigned for error.

E. S. DARGAN, for appellant.

GIBBONS & PRICE, contra.

BRICKELL, C. J.—This cause was before this court at the June term, 1873, on an appeal from a decree of the chancellor sustaining a demurrer to the original bill, for want of

[Carleton v. Rivers et al.]

equity. The decree was reversed, the court deciding the allegations of the bill disclosed an investment by the husband of the separate funds of the appellee in the purchase of the lands in controversy, whereby a trust of the legal title resulted to her. The cause now returns on an appeal from a final decree on pleadings and proofs, establishing and enforcing the trust.

The general principle, that if one person purchase lands with the moneys of another, taking title to himself, a trust results to the owner of the money, in a court of equity, is most rigidly enforced when the person using the moneys sustains a fiduciary relation to the person whose moneys are invested; and perhaps never with more strictness than when a husband, having under his control the separate estate of the wife, purchases lands with it, and takes title to himself. Whatever may be the relations of the parties, the foundation of the trust, the indispensable element of its existence, is that coeval with the purchase, and the acquisition of title, the moneys of one formed the consideration, while the title passed to another. A husband, a trustee, or whatever may be the relation he bears to another, may, on his own credit, and for his own purposes and profit, purchase lands and take the title to himself. Subsequently, in violation of duty, committing a breach of trust, he may appropriate trust funds to extinguish the debt he created in the purchase. This violation of duty—this breach of trust—cannot relate to the original purchase and conveyance, and engraft on it a trust, not springing up cotemporaneous with the purchase and conveyance. The purchase and conveyance pass the entire estate, legal and equitable. It was without trust or incumbrance, from the delivery of the conveyance. The resulting trust, a court of equity recongnizes and enforces, says Ch. KENT, "must have been coeval with the deeds, or it cannot exist at all."—*Botsford v. Burr*, 2 Johns. Ch. 405; *Foster v. Trustee of Athenæum*, 3 Ala. 302; *Rogers v. Murray*, 3 Paige, 390; 1 Lead. Cases in Eq. 272, 280.

The lands on which the appellee seeks to fasten the trust, were purchased by the husband on his own credit, and the purchase and conveyance were cotemporaneous. The securities for the purchase money were a draft or bill, drawn by the husband in his own name, which was subsequently accepted and paid on his account solely, and his promissory note payable in the future. If it is conceded to the appellee that this draft and note were by the husband subsequently paid with her separate funds, the payment could not devest the legal estate vested in the husband by the conveyance, on which no trust was imposed when it was created. The chan-

cellor, therefore, erred in decreeing a trust of the legal title resulted to the appellee.

The moneys, it is averred, that were used in paying these debts, were derived from the savings of the appellee during coverture. At common law, these savings were as absolutely the property of the husband as the fruits of his own industry and economy. By gift, he could create in the wife an equitable estate in them. The evidence of such gift must be clear, and it must be apparent the husband intended to divest himself of the right to such savings, and to set them apart to the separate use of the wife.—*McLemore v. Pinkston*, 31 Ala. 266. The statutes creating separate estates have not changed this rule of the common law, nor lessened the right of the husband to the earnings and savings of the wife. Such earnings and savings are not property *accruing* to the wife within the meaning of these statutes, and it is only as to such property the common law rights of the husband are changed. He is still entitled to the control of the wife, and to the benefits of her labor and economy.—*Raybold v. Raybold*, 20 Penn. 310; *Henderson v. Warmack*, 27 Miss. 834; *Elliott v. Bentley*, 17 Wis. 591; *Hoyt v. White*, 46 N. H. 45; *Gerry v. Gerry*, 11 Gray, 381. All that can be justly said of the evidence in this cause, is that, for a series of years during the coverture, the husband was engaged in pursuits which constrained him to be absent from his home the greater part of the time. During this absence the management and control of the domestic affairs, including the supervision of the farm 'on which they resided, devolved on the appellee. By her industry, prudence and economy, profits were derived from the cultivation of the farm, and from these profits were realized the moneys the husband applied in the payment of the debt incurred in the purchase of the lands. Apart from the husband's acquiesence in the appellee's management and control of the farm, and of her children, and the slaves employed in cultivating it, there is not the slightest evidence that he had relinquished any claim he had to the appellee's earnings, or to the profits of the farm. Such acquiesence was a necessity of his prolonged absence, and continued engagement in other pursuits, which seem to have demanded his entire attention. It does not authorize the inference that he parted with his right to the earnings of the wife, or created in her a separate estate in them.

The decree must be reversed, and a decree here rendered dismissing the bill, at the cost of the appellee in this court and in the court of chancery.