[McAnally v. O'Neal & O'Neal.]

# McAnally v. O'Neal & O'Neal.

56  299
121  170

*Bill in Equity by Creditor without Lien, to subject Lands conveyed by Insolvent Debtor by Deed of Gift.*

1.   *When creditor without lien may come into equity.*—A creditor without a lien, or by simple contract only, may come into equity to reach and subject lands fraudulently conveyed by his insolvent debtor.

2.   *Presumed existence of common law.*—In the absence of proof to the contrary, this court will presume that the common law prevails in Georgia, or in any other State having a common origin with our own.

3.   *Husband's marital rights at common law*—By the common law, marriage operates a gift to the husband of all the moveable effects of the wife which are in possession at the time, and of all choses in action which he reduces to possession during the coverture; and he is also entitled to all her personal earnings as they accrue.

4.   *Voluntary conveyance.*—A voluntary conveyance is constructively fraudulent as to existing creditors, without any reference to the motive or intent with which it is made.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 27th March, 1875, by the appellees, who were attorneys at law, and sued as partners, against Patrick McAnally, his wife, Catherine McAnally, and their infant son, Richard H. McAnally; and sought to reach and subject to the satisfaction of a debt, which the complainants held against said Patrick McAnally, certain town lots in Birmingham, which he had bought, and conveyed to his wife and child. The complainants' debt was for professional services rendered by them in prosecuting a claim against the United States for said McAnally, and was evidenced by his written promise to pay them $500 for said services, which was dated the 16th November, 1872, and made an exhibit to their bill. They alleged that he bought and paid for the lots with the money which he had recovered from the United States through their services, and that he was insolvent. The material ground of defense was, that the money belonged to Mrs. McAnally, and not to her husband. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainants; and his decree is now assigned as error.

PORTER & MARTIN, and HEWITT & WALKER, for appellant.

WATTS & WATTS, *contra.*

STONE, J.—Since this appeal has been pending in this court, Edward A. O'Neal, Jr., has died. The claim which they seek to enforce is a partnership demand, and it is now the property of Edward A. O'Neal, surviving partner. The case will be continued in his name as appellee.

The complainants below make out a clear case for relief, unless it is shown that the money, with which the lots were purchased, was the separate estate of Mrs. McAnally. We say they make out a clear case, because they aver and prove that they were creditors of Patrick McAnally, the husband, before the money was recovered from the government; that McAnally was insolvent, having no other estate or effects; and that the money, which was recovered in the name, and on the claim of Patrick, the husband, was invested in the designated city lots of Birmingham, and titles taken in the names of his wife and infant child. These facts, unrebutted, make a clear case for equitable interposition.—*Ellis v. State Bank*, 30 Ala. 478; *Halfman v. Ellison*, 51 Ala. 543.

For defendant below—appellant here—it is contended, that the money with which the lots were purchased, was the separate estate of Mrs. McAnally, and therefore the property is not subject to the debt of her husband. The testimony of husband and wife, Patrick and Catherine McAnally, is all the evidence tending to prove her claim. Their testimony tends to show that they intermarried in the State of Florida, in the year 1856. The record is silent as to where they then resided, but we must presume they resided where they were married. In 1863, they were residing in Georgia. During that year, Patrick purchased merchandise in Florence, Alabama, with the intention of carrying it to Georgia, to be there sold for a profit. Before he had proceeded far, he was captured by Federal forces, and imprisoned for a month; and his goods seized, whereby they were lost to him. He preferred a claim against the government of the United States— he being a British subject—for $3,100, an account of the said goods captured, and for $2,500 damages for his imprisonment. This claim he made oath was entirely his own, and no other person had any interest in it. He employed O'Neal & O'Neal, who were attorneys at law, to prosecute his claim, and agreed, in writing, to give them $500 out of the sum they might recover, for their services to be rendered. They rendered services, but not the entire services; and several witnesses testify, that the services thus rendered by them were worth $500. This was before the investment of said moneys in the Birmingham lots. On the said claim against the government of the United States, there was recovered and received by McAnally $3,200 in gold, less a fee paid to another

[McAnally v. O'Neal & O'Neal.]

law firm.　With part of this money said lots were purchased. The record does not inform us how much was paid by Mc-Anally for the goods he lost, in what currency he paid, nor on what particular account the government allowed him the $3,200 in gold; whether entirely for the merchandise, or partly for the merchandise, and partly for the imprisonment, is not shown.

McAnally testified as follows: "The money that I used [in the purchase of the goods] was my wife's.　The goods were bought by me with it, and were my wife's.　The goods belonged to Catherine McAnally, because she had the money when I married her, and she carried on a big business.　Said property was accumulated by my wife's labor and industry. My wife had money when I married her, and she made money on her own hook, and is able to do it yet.　*　*　She made the money at Atlanta, Georgia, before I went off to Tuscumbia.　She had manufactured sewing with a lot of women. *　*　She had money when I married her."　Speaking of her business in Atlanta, he said : "She owned the business she was in.　It consisted in the business, money, and twelve Singer sewing-machines.　*　*　The amount collected from the 'mixed commission' was for property of my wife.　The property belonged to her in her own right.　*　*　My wife possessed her money at the time of the seizure.　Her separate estate consisted of about two thousand dollars, I think. It was located in Atlanta, Georgia."

Mrs. McAnally testified : "The property belonged to me, Catherine McAnally.　I worked for it.　I did not give the property to any one with my consent.　*　*　I paid my money for the lands purchased, described in the deeds. Patrick McAnally never owned any interest in said money. *　*　I gave the money to Mr. McAnally, to buy the goods. I worked for the money.　I had separate estate.　It consisted in money and value.　It was in Atlanta, Georgia, on Whitehall street.　*　*　Yes, I say that the property seized was my separate estate, and that Patrick McAnally had no interest in the same."

The foregoing is the substance of all the testimony, tending to show that the money belonged to Mrs. McAnally.　It will be observed, that there was no testimony, fixing the amount of money owned by Mrs. McAnally when she was married, or what became of it.　We think the tendency of the testimony is to prove that, if Mrs. McAnally's money purchased the goods, it was money she claimed, because she had worked for it, in the State of Georgia.　There is no proof of the laws of Georgia or Florida, fixing the property-rights of husband and wife.

We do not consider it necessary to inquire what presumptions or intendments we should indulge in regard to the marital laws of Florida, for two reasons: First, the proof as to what money Mrs. McAnally owned at the time of her marriage is so vague and indefinite, and the lapse of time so great, that we cannot find that any of that fund entered into the purchase of the merchandise which the Federal army captured; second, as stated above, we think the tendency of all the proof relied on by Mrs. McAnally is, that the money earned by her at Atlanta, Georgia, was the money with which the merchandise was purchased. That money she worked for and earned, while she was the wife of Patrick McAnally.

We have repeatedly held, that, in the absence of proof to the contrary, we will presume that the common law prevails in Georgia, and in all other States having a common origin with our own.—1 Brick. Dig. 349, § 9. By the common law, marriage operates a gift to the husband, of all the moveable effects of the wife which are in possession at the time of the marriage, and of all her choses in action which he reduces to possession during the continuance of the coverture.—2 Brick. Dig. 72, §§ 51, 52, 53, 54, 55; *Bell v. Bell*, 36 Ala. 466; *S. C.*, 37 Ala. 536; *Thrasher v. Ingram*, 32 Ala. 645. The husband is entitled to, and owns the personal earnings of the wife.— *McLemore v. Pinkston*, 31 Ala. 266, 308; *McLemore v. Nuckolls*, 37 Ala. 662.

To rebut the presumptions stated above, and to show that the husband's rights did not attach according to the rules of the common law, requires much more satisfactory proof than is found in this record. Property of the wife, in the absence of a statute on the subject, must be settled to the sole, separate, or exclusive use of the wife, or the husband's rights will attach.—See 2 Brick. Dig. 81, §§ 165, 166. The proof in this record is wholly insufficient for the purpose.

Under these plain, unquestioned principles of law, we feel bound to hold, that the money with which the goods were purchased in 1863, and, consequently, the recovery from the government of the United States in 1874, were the property of Mr. McAnally, and his wife then had no interest in it; and when he invested such money in the purchase of property, for, and in the names of his wife and child, such investment is but a gift from him to them. Gifts of property, by one indebted at the time, are, as to such debts, constructively fraudulent and inoperative, without any reference to the motive or intent.—*Miller v. Thompson*, 3 Por. 196; *Moore v. Spence*, 6 Ala. 506; *Foote v. Cobb*, 18 Ala. 585; *Stiles v. Lightfoot*, 26 Ala. 442.

We think this record presents a clear case for equitable relief, and that the chancellor did not err in so ruling.

The record fails to show that Mr. or Mrs. McAnally occupied any of the lots as a homestead; and for this, if for no other reason, there is no homestead exemption shown in their favor.—*Miller v. Marx*, at present term.

The decree of the chancellor is affirmed.