PINKSTON vs. McLEMORE.

[BILL IN EQUITY BY WIFE, AGAINST EXECUTION CREDITORS OF HUSBAND, TO ENJOIN SALE OF HER SEPARATE PROPERTY.]

1. *Separate estate of wife in proceeds of her own labor.*—The husband may, by gift or contract, create in his wife a separate estate in the proceeds of her own labor; the validity of such gift, as against creditors, being subject to the same rules which apply to other voluntary conveyances.

2. *Validity of voluntary conveyance.*—A contract between husband and wife, by which a separate estate is created in the wife in the earnings of herself and

her domestic servants, is void as to the existing creditors of the husband, but valid as to his subsequent creditors, unless assailable for intentional fraud.

3. *Separate estate in wife created by gift from third person.*—If a purchaser at mortgage sale of the husband's property, after selling a portion of the property sufficient to reimburse him for the purchase-money paid, voluntarily conveys the residue to a trustee, for the sole and separate use of the mortgagor's wife; and there is no fraud in the transaction, the wife takes a separate estate in the property, which cannot be reached by her husband's creditors.

4. *Proof of ownership of personal property.*—Although the general principle, that possession is presumptive evidence of the ownership of personal property, may not ordinarily apply to a possession by the wife during coverture; yet, where it appears that the wife was authorized by a decree of the chancery court to accumulate property for her separate use, had means sufficient to have purchased it, and claimed and controlled it as her own, and that the husband had no property or means with which to procure it,— this is sufficient, *prima facie*, to establish the wife's ownership, and cast the *onus* upon the husband's creditors to show its liability for his debts.

5. *Proof of actual fraud in voluntary conveyance.*—A contract between husband and wife, by which a separate estate is created in the wife in the earnings of herself and her domestic servants, after defraying the family expenses, will not be declared void, at the instance of subsequent creditors of the husband, on proof that he was greatly embarrassed with debts and contingent liabilities when the contract was made; when it also appears that he then possessed a large estate, consisting of real and personal property, which was then unincumbered, and which is not shown to have been insufficient for the payment of his debts; and that money was collected from him under execution for five or six years afterwards.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. WADE KEYES.

THE bill in this case was filed by Mrs. Matilda S. Pinkston, suing by her next friend, against James K. Pinkston, her husband, Moses McLemore, and Rebecca Smith; and sought to enjoin the two last named defendants from further proceedings at law, to subject to the satisfaction of their several judgments against said James K. Pinkston, certain slaves and other personal property in which complainant claimed a separate estate. It alleged, in substance, that Mrs. Pinkston made an agreement with her said husband, in 1839 or 1840, that she would defray all their family expenses out of the earnings of herself and four domestic servants, if he would allow her to retain the surplus for her separate use; that her husband assented

to this arrangement, and placed the four slaves entirely under her control; that at this time he was possessed of a large estate, consisting of lands and slaves, a large portion of which he had derived by his marriage, and owed several debts of inconsiderable amount; that under this contract, by the exercise of industry and economy, complainant was enabled to realize from the proceeds of the labor of herself and servants a sum which, after paying all the current family expenses, and assisting her husband in the payment of his debts and the education of their children, amounted in 1850 to over $2,000; that in July, 1846, Moses McLemore conveyed by deed of gift several mules and horses to a trustee for her separate use; that in February, 1849, said McLemore also conveyed to said trustee three slaves which he had bought at a mortgage sale of her husband's property, and the purchase-money for which she refunded to him out of her separate earnings; that McLemore purchased other property at said mortgage sale, and, after re-selling a portion sufficient to reimburse him for the purchase-money, conveyed the balance to said trustee, for complainant's sole and separate use; that in July, 1850, complainant obtained a decree of the chancery court of Montgomery county, declaring her a free-dealer, and settling her future earnings and acquisitions of property on said McLemore as her trustee; and that said McLemore, becoming unfriendly to her from some cause unknown, had lately caused several executions of which he had the control, some in favor of himself as executor of Joseph Harper, deceased, and others in favor of Rebecca Smith, whose agent he was, to be levied on the slaves and other property which the complainant had accumulated from the sources above stated. The bill prayed an injunction of further proceedings at law, and general relief.

A decree *pro confesso* was entered against Pinkston. The other defendants answered; denying all the material allegations of the bill; and alleging that the contract between complainant and her husband, if any such was made, was fraudulent and void as to the creditors of the

husband, who was then, if not insolvent, greatly embarrassed with debt.

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

THOS. WILLIAMS, for the appellant.

WATTS, JUDGE & JACKSON, *contra*.

WALKER, J.—The complainant claims to have made a contract, in 1839 or 1840, with her husband, whereby she was to have a separate estate in the earnings of herself and four domestic servants, and out of them defray the family expenses. The earnings of a married woman belong to the husband. He may, by contract with her for a consideration, or by gift, invest her with a separate estate in her earnings, which will be maintained in equity against the husband and his representatives; but such separate estate, created by gift, can not be valid against existing creditors, for the same reason which avoids other voluntary conveyances as to such creditors.—2 Eq. Cas. Abr. 155; 11 Viner's Abr. 180–181; 2 Story's Eq. § 1375; 2 Roper on H. & W. 137; 2 Bright on H. & W. 302; McLean v. Longlands, 5 Vesey, 78; Pinney v. Fellows, 15 Verm. 525; Baron v. Baron, 24 Verm. 375; Neufville v. Thompson, 3 Edw. Ch. 92.

2. The contract alleged to have been made between complainant and her husband, and which is claimed to have the effect of investing her with a separate estate in the earnings of herself and her domestic servants, must, under the principles above stated, be void as to the existing creditors of the husband, and valid as to subsequent creditors, unless it is assailable for intentional fraud. The proof establishes the allegation of the answers, that the debt of the defendant Smith was subsisting at the time of the alleged contract between complainant and her husband; and the contract, being altogether voluntary, is void as to that defendant. The earnings of the complainant and her servants were, as to the subsisting creditor, the property of the husband; and the property bought with

those earnings was also the property of the husband, and, therefore, liable to the execution levied upon it. It follows that, as to the defendant Smith, the bill was properly dismissed.

3. The executions in favor of Moses McLemore, as executor of Joseph Harper, were levied upon the following property, to-wit: two bay horses, a buggy and harness, one wagon and harness for four horses, and one sorrel horse. The buggy and harness were obtained in exchange for a carriage. The carriage and two bay horses were purchased in 1846, together with some other property, at a mortgage sale of some of the property of James K. Pinkston, the complainant's husband, by said McLemore. The property so purchased was conveyed by McLemore, of his own motion, to a trustee for the separate use of Mrs. Pinkston; and a sufficiency of the property was sold to reimburse to McLemore the purchase-money paid, leaving the residue a separate estate in the hands of Mrs. Pinkston. In this transaction there is no evidence of fraud. The property was sold under a mortgage; bought and paid for by the purchaser, who gives the remainder, after the sale of a sufficiency to reimburse himself, to Mrs. Pinkston. The property thus acquired by Mrs. Pinkston would not be liable to the payment of her husband's debts. The property, when purchased and paid for by Moses McLemore, was his; and he had an unquestionable right to invest Mrs. Pinkston with an exclusive title, which would be beyond the reach of her husband or his creditors.

The wagon and harness levied on is shown by the proof to have been purchased by Mrs. Pinkston long after the contract with her husband that she might have her earnings as a separate estate; and this property could not be liable to any creditor of the husband, whose debt was of date subsequent to that contract.

Mrs. Pinkston, in 1851, bought and paid for a sorrel horse, which was conveyed by the seller to her separate use. We think the evidence authorizes the conclusion, that this was the same sorrel horse levied on by virtue of the execution in favor of Moses McLemore. In 1850,

Pinkston v. McLemore.

Mrs. Pinkston obtained a decree in the chancery court, under the act of 31st January, 1846, securing to her sole and separate use her earnings and accumulations. The sorrel horse was purchased after that decree. The wagon and harness were also purchased after the same decree. There are two negroes, Phil and Bella, which the bill alleges, and the answer of McLemore admits, were about to be levied on by virtue of McLemore's executions when the bill was filed. The other property, besides that levied upon and about to be levied upon, it does not appear either from the bill or proof that the defendants intended to disturb; and as to it there is, therefore, no case made out requiring redress in a court of justice, and we do not on that account consider the question of the complainant's title to it. It does not appear, either from the bill or in the testimony, how Mrs. Pinkston obtained the slaves Bella and Phil. The proof shows that she obtained them one year before the deposition of the witness was given, in October, 1852. It follows, that those slaves were procured by her after the chancery decree securing to her sole and separate use her sole and separate earnings. These slaves she controlled and treated and claimed as her own. It does not appear that they ever belonged to, or were in the possession of, Mrs. Pinkston's husband. It is also proved with satisfactory certainty, that for a long time before those negroes were possessed by the complainant, her husband had neither owned nor claimed any property, nor had any means to procure it. It further appears that Mrs. Pinkston had, by the use of extraordinary industry, economy, and skill in the management of her affairs, been in the receipt of an income sufficient to have enabled her to make purchase of these slaves.

4. Now, the general principle is, that from possession itself the law will presume ownership of personal property, and cast the *onus* of proof upon the party assailing the title inferred from possession. We do not say that this doctrine applies ordinarily to a possession by the wife, where the conjugal relation exists; but, where the wife has been authorized under the law of the land, by a decree of the chancery court, to earn and accumulate for her own

separate use, and where she has possessed property separately from her husband and not in connexion with him, and controlled it as in her separate and distinct right, and has shown that she had the means, aside from her husband, to have purchased, and her husband had no property and no means with which to procure it, the burden of proof, in our judgment, ought to be thrown from her, and cast upon those who assert the liability of the property to the husband's debts. The defendant has introduced no proof, conducing to show the falsity of the claim set up by Mrs. Pinkston; and we will treat the slaves Phil and Bella as her separate estate, the result of her own earnings.

5. But it is said that the original contract between Mrs. Pinkston and her husband was made with the intent to defraud the creditors of the latter. The proof shows that, in 1840, when the contract was made, the husband was embarrassed with a heavy indebtedness, and some contingent liabilities; but it does not show that, at that time, his property was insufficient, or appeared to be insufficient, for the payment of his debts. His credit is admitted to have been then good. Until 1845 or 1846, (five or six years afterwards,) money was collected from him by execution. He had, at the time of the contract, a valuable plantation, with more than fifty slaves; and it was not until five or six years afterwards that he incumbered his property with a mortgage; and it was not until 1852, about twelve years afterwards, that his property was sold to pay his debts. By the contract between Mrs. Pinkston and her husband nothing was diverted from the creditors, which would likely have existed and been liable to their debts. No property was conveyed to her, and that which was subjected to her use was not productive property. It consisted of the servants employed in and about the residence of the family. The arrangement simply converted into a separate estate for Mrs. Pinkston the income which she might create by her industry and skill in the management of so much of the labor of four domestic servants, as was not consumed in the service of the family. There is no certainty that any thing thus transferred to Mrs. Pink-

ston would ever have existed in a form to have benefited creditors but for the arrangement. We can not find in these circumstances evidence which will justify us in characterizing the contract as one fraudulent in intention. There is no proof that the object was to make Mrs. Pinkston the holder of her husband's money, or that she ever used any of his money, or any money derived from him, in any of her operations. If such facts existed, the defendant ought to have proved them.

The decree of the court below is reversed, and we proceed to render the decree which we think is the proper one in the case. It is ordered, adjudged, and decreed, that the complainant's bill stand dismissed, and the injunction be dissolved, as to the defendant Smith; that the defendant McLemore, as executor of Joseph Harper, be perpetually enjoined from the sale of the property levied upon by virtue of the executions described in complainant's bill, and from the levy by virtue of said executions, or any other executions upon the same judgment, upon the slaves Phil and Bella; that the complainant be denied any decree as to the other property mentioned in the bill, upon the ground that her separate right to the same has not been attacked or threatened; that the complainant pay one half, and the defendant McLemore the other half, of the costs in the court below; and that the complainant and defendant McLemore pay each one half the costs of this appeal.