## JOHN S. DYGERT *vs.* CATHERINE REMERSCHNEIDER and others.

Where a marriage settlement, in itself, provides for the payment of all existing debts, and such debts are actually paid, in pursuance of it, it is not fraudulent in law.

In such a case, as to all subsequent creditors, such a settlement is not presumptively fraudulent in fact.

Where, by a parol ante-nuptial agreement, the intended husband agreed on his part to convey certain real estate to his intended wife, and she in consideration thereof agreed to marry him, and pay his existing debts, and after the marriage the husband conveyed the land to E. for the benefit of the wife, and she paid her husband's debts, out of her individual earnings

and separate estate; *Held* that this was a contract of purchase, as to the real estate, and was not a voluntary settlement.

*Held, also,* that although the payment of the larger proportion of her husband's debts was made from the wife's earnings after marriage, which in law would otherwise have been her husband's means, yet that her right to it was an equitable right under the executory contract made before marriage, and was based upon a good consideration proceeding from her, to wit, that of marriage and the advance of her separate estate.

*Held,* further, that the agreement on the part of the husband that his wife's future earnings should be applied to the payment of his own then existing debts, was not fraudulent as against his subsequent creditors.

That the stipulations of the ante-nuptial agreement on the part of the wife having been fully performed by her after marriage, she was entitled to have the agreement specifically performed, as against her husband.

That the husband having subsequently executed the agreement, by causing the land to be conveyed to his wife, in pursuance of its terms, she held the land by a superior claim of equity to her husband's subsequent creditors; and her equity related back to the time when the conveyance ought to have been made by the terms of the agreement.

That whether the agreement, when executed, was to be regarded as a voluntary settlement or a purchase, the right of the wife was in equity to be preferred to the claim of a subsequent judgment creditor of the husband.

THIS case is upon a complaint in equity, to set aside several conveyances as fraudulent. George Remerschneider, on the 3d June, 1861, conveyed two certain lots of land in Canajoharie, Montgomery county, to the defendant John Eigler, who, on the same day, conveyed the same lands to the defendant Catherine Remerschneider, who was the sister of Eigler, and the wife of George Remerschneider. The defendant Catherine subsequently conveyed one of the lots to the defendant Satz, and took back a mortgage for the consideration money. The plaintiff is a judgment creditor of George Remerschneider. An execution had been issued upon his judgment and returned by the sheriff of Montgomery county unsatisfied. The plaintiff asks, by his complaint, to set aside these several conveyances as fraudulent against him. A referee had been appointed to take and report the testimony, and the case came before the court upon the evidence so reported. The plaintiff's debt arose upon a promissory note, executed by a firm, "Pain & Blier," and the defend-

Dygert *v.* Remerschneider.

ant George Remerschneider was a surety upon the note, which was dated October 3d, 1860. The plaintiff's action was commenced May 28th, 1861, and judgment was perfected 25th January, 1862. All the other facts sufficiently appear in the opinion.

*P. Wetmore* and *George Smith,* for the plaintiff.

*Hees & Dunkle,* for the defendants.

Potter, J. Starting with the plaintiff's case unexplained by the defense, the facts that the defendant George Remerschneider was at the date of the deeds in question liable for the plaintiff's demand as a just debt ; that he was then the owner of real estate of sufficient value to satisfy such debt ; that five days after the commencement of the action on the note he conveyed the said lands with the intent to vest the title in his wife; and that he still occupies and enjoys a portion of the said property with his wife; were sufficient, prima facie, for the plaintiff to rest his case upon. These facts cast upon the transaction the legal presumption of fraud, entitling him to the relief claimed. A defense, however, was set up by the defendant Catherine Remerscheider, that the transaction of the conveyances was bona fide, and made upon good consideration. The evidence by the referee's report, establishes the following state of facts : In October, 1854, the defendant George Remerschneider was a widower, residing at Canajoharie, about 52 or 53 years of age, owning the real estate in question, in two parcels, which was then worth about $700. He was in debt about the amount of the value of this real estate ; he had very little personal estate ; had two or three daughters then grown up ; was addicted somewhat to drink ; was by trade a mason, working when he could get jobs, and earning about $100 a year ; he was embarrassed with his debts ; some of them were in judgment, and constables about that time were advertising his

personal property on execution. The defendant Catherine, then Catherine Eigler, was a single woman, a tailoress, about the age of 24, about two and a half years from Germany; had worked in the city of New York at her trade, and for a few weeks had been so at work at Canajoharie. George Remer-schneider was there introduced to her and offered her marriage. After some negotiations on the subject, and also on the subject of his pecuniary condition, in which he informed her his debts were between $600 and $700; a parol ante-nuptial contract was made between them, in substance as follows: George Remerschneider on his part was to convey to her the said real estate; Catherine on her part was to marry him and pay his debts. In consideration of this agreement the marriage was consummated. The details of the agreement, in relation to the time when the lands were to be conveyed on his part, the time within which the debts were to be paid on her part, and the source from which they were to be paid, was left, either without definite agreement between them, or is without explanation by evidence; except, it does appear, that in the negotiation Catherine said she had some money that she brought from Germany, and that some more was expected, (neither of which amounts were stated,) but this money was to be applied by her to the payment of his debts. She did, subsequently, pay all the debts which her husband then owed, exceeding in amount $700, and which sum was above the sum stated by him at the time of the agreement. These debts were paid by her from the following sources: When she married him, she had $25 of money she brought from Germany. This, with $70.28 from her earnings in that year, (whether these earnings were all before her marriage, which was in October, does not appear,) and $55.98 which she subsequently received from Germany, was applied to the payment of his debts. The remainder of his debts, exceeding $550, it is clear, was earned by her by work at her trade after her marriage. In the absence of evidence of her agreement to pay all his debts from her individual means, or

Dygert *v.* Remerschneider.

to any extent further than such means existed; and the fact that does appear, that she kept her own book account of her earnings, which when collected by her she applied from time to time, by his consent, to the payment of his debts, it was a fair inference, and I so found the fact to be, that in their agreement before marriage, it was understood that she was to apply all the money she received from Germany towards the discharge of his debts, and that she did so apply it. And I also found it to be a part of the said agreement, that the remainder of his then existing debts were to be paid by her from her earnings at her trade as a tailoress after marriage, and that she fully performed this part of the agreement on her part. The evidence also establishes that George Remerschneider after marriage was frequently requested to convey the said lands to her; that he frequently promised so to do, but omitted to convey them until after the plaintiff's action was commenced. The plaintiff's debt was not incurred by George Remerschneider until about six years after this marriage.

It is now claimed by the plaintiff that a settlement after marriage, in pursuance of a parol ante-nuptial agreement, is void; and that the earnings of the wife after her marriage belong to her husband, and are a fund liable to the payment of his debts. Both these propositions, in the abstract, are probably sound. By the statute of frauds, all parol agreements relating to the sale or conveyance of lands are void. Ante-nuptial agreements were not an exception to the rule, before the statute of 1849, (*chap.* 375, *p.* 529, § 3,) which provides as follows: "All contracts made between persons in contemplation of marriage shall remain in full force after such marriage takes place." It is not necessary, in the view I have taken of this case, to decide whether this statute in any degree abrogates the statute of frauds so far as it relates to marriage contracts. It is doubtless a well established rule in equity, and at law, that a settlement after marriage, in pursuance of a parol agreement entered into be-

fore marriage, was not valid as against creditors. (*Reade* v *Livingston*, 3 *John. Ch.* 481.) The same authority, however, lays down the rule, that a settlement made after marriage in pursuance of a *valid* or of a written agreement before marriage is good. As the agreement before us was not in writing it must be otherwise shown to be *valid*, in contemplation of law or equity, or the defense must fail, as against creditors. It was held in *Dunham* v. *Taylor*, (29 *Geo. Rep.* 166,) that marriage is such a part performance of the ante-nuptial contract as to take it out of the statute of frauds of that state. And it cannot be doubted that there may be parol contracts in regard to the conveyance of lands, in this state, with part or partial performance, that the courts would enforce between the parties on a complaint for specific performance. Unless, therefore, the defendants bring this case within some exception, the rule is doubtless as claimed by the plaintiff. So it was held in *Beaumont* v. *Thorpe*, (1 *Vesey*, 27,) and in various more recent cases, that a *voluntary* settlement made after marriage by a person indebted at the time, is fraudulent and void against creditors. The presumption of law in such case is, that it is fraudulent and void against all debts *then* existing, without regard to their amount, or the extent of the property, or the circumstances of the party; though this has been much questioned in England. None of the cases go to the length, however, in regard to subsequent debts, of excluding explanation of the transaction, or of preventing the showing of good faith, or a good consideration. In regard to such debts, we are not to hold a deed fraudulent merely because it is voluntary. In such case, before we can pronounce it fraudulent, we must decide, as matter of fact, that there was a fraudulent intent in making the conveyance. In a case, therefore, where every creditor of the grantor was by the agreement to be paid, and was subsequently paid, in pursuance of the agreement, there would seem to arise no presumption of fraud; and in the absence

Dygert *v.* Remerschneider.

of other facts, the agreement would be valid. (*Frazer* v. *Western*, 1 *Barb. Ch. R.* 220.)

In regard to subsequent creditors, in cases of voluntary settlement, as I understand the rule, they stand in no superior condition, in equity, to that of the person upon whom the settlement is made, when the settlement is not impeached for want of good faith. It is an old maxim, that where the *rights* of parties are equal, the claim of the party in possession shall prevail. So, too, where the *equities* are equal, he has the better title who is first in point of time. (*Co. Lit.* 14, *a.*) If there has been a prior *valid* agreement, it has the superior right over subsequent creditors. What I mean here by a valid agreement, as distinguished from a voluntary agreement, is one that may be regarded as a purchase where a consideration has been paid. Is this such an agreement? Almost identical with the case before us, is *Brown* v. *Jones and others*, reported 1 *Atkyn's R.* 188, 190. It differs only in that of assignees in bankruptcy, instead of a judgment creditor. That was a marriage settlement, made ten years after marriage. The consideration was £1000 agreed to be advanced. £600 only had been advanced by the brother of the wife ; the remaining £400 had never been paid. Brown, the assignee in bankruptcy, claimed that the agreement to advance had never been fully performed. Lord Hardwicke said, "the case has been made out to my satisfaction. Though the court will favor creditors as much as they can, it must be where they have superior right over other persons." "It is admitted, (says he,) that if a settlement is made before marriage, though without a portion, it would be good, for marriage itself is a consideration, and it is equally good if made after marriage, *provided it be upon payment of money* as a portion, or a new and additional sum of money; *or even an agreement to pay money*, if the money be afterwards paid in pursuance of the agreement. This, (says he,) is allowed both in law and in equity to be sufficient to make it a good and valuable settlement." In

the case of *Scott* v. *Ball*, (2 *Lev.* 70,) the question raised was, whether the sum paid was a fair equivalent for the amount of the estate settled. Lord Ch. J. Hale said, "The court, in family agreements, does not nicely estimate the value of estates, but only whether it is a fair, honest agreement." In the case of *Wheeler* v. *Caryl*, (*Ambler's R.* 121,) the question was whether the settlement was *voluntary* and fraudulent against creditors ; or for a valuable consideration, and good. The lord chancellor said, "This is clear ; if after marriage a father, brother or other person, advance a sum of money in consideration of the husband's making a settlement, such settlement will be good and for a valuable consideration."

In *Lush* v. *Wilkinson*, (5 *Vesey*, 387,) the rule was laid down, that whether a voluntary settlement was good or not, depended upon whether the person making it was solvent ; and in *Kidney* v. *Coussmaker*, (12 *Vesey*, 136,) it was held that a settlement after marriage was fraudulent *only* against persons that were creditors at the time. This, I think, has been followed as the rule ever since. In *Reade* v. *Livingston*, (*supra*,) Chancellor Kent assents to this rule, with this very just modification, "that subsequent creditors may impeach the settlement for fraud, if they can show *antecedent* debts sufficient in amount to afford reasonable evidence of a fraudulent intent. In *Pinkston* v. *McLemore*, (31 *Ala. Rep.* 308.) it was held, that "a contract between husband and wife by which a separate estate was created in the wife in the earnings of herself and her domestic servants, was void as to *existing creditors* of the husband, but *valid as to his subsequent creditors*, unless assailable for intentional fraud." And in *Reynolds* v. *Sanford*, (16 *Texas Rep.* 286,) it was held "that a husband may settle his property on his wife and family when he may do so without impairing the rights of *existing creditors*."

And in a more recent case in our own state, (*Simmons* v. *McElwain*, 26 *Barb.* 419,) the court, in the third district,

held "that although a deed from a husband to his wife (directly) is void in law, yet such a grant will be upheld in equity when it is necessary to prevent injustice. And where a wife, in good faith and for a valuable consideration, paid out of her separate estate, has purchased land which is conveyed to her by her husband, she obtains an equitable right to it, which a court of equity will recognize and protect. The contract in this case was made after the taking effect of the acts of 1848 and 1849, in relation to the estates of married women. The individual estate of Catherine Remerschneider which would have remained her separate estate, was a part of the purchase money of this estate. This, together with marriage, was a consideration actually paid by her for the lands in question, and which, as the facts are found, was all that she was to pay therefor. Her subsequent earnings, it may be assumed, her husband, if he did not grant in the ante-nuptial contract, waived or released his right to, and this was no fraud against subsequent creditors. Since the acts of 1848 and 1849, the advance of her own money, in performance of such an agreement, is of the same effect as if it was the money of any other person, and creates a good legal and equitable purchase.

I think we can deduce from the cases above cited, as applicable to this, the following propositions:

1st. Where a marriage settlement in itself provides for the payment of all existing debts, and such debts are actually paid in pursuance of it, it is not fraudulent in law.

2d. In such case, as to all subsequent creditors, such settlement is not presumptively fraudulent in fact.

3d. In this case, the agreement and promise of the defendant Catherine Remerschneider to pay the debts of her future husband, and the subsequent appropriation thereto of her individual and separate estate, was a contract of purchase, and not a voluntary settlement.

4th. Though the payment of the larger proportion of her husband's debts was from her earnings after marriage, which

in law would otherwise have been her husband's means, yet her right to it was an equitable right under the execu-tory contract made before marriage, and was based upon a good consideration proceeding from her, to wit, that of marriage, and the advance of her separate estate.

5th. That the agreement on the part of George Remerschneider that his wife's future earnings should be applied to the payment of his own then existing debts, is not fraudu-lent towards his subsequent creditors.

6th. The consideration of the ante-nuptial agreement, on the part of Catherine, having been fully performed and con-summated by her, after marriage, entitled her to have the agreement specifically performed as against her husband.

7th. George Remerschneider, subsequently, in pursuance of the agreement on his part, having executed it, by causing the lands to be conveyed to his wife, she holds the lands by a superior claim of equity to her husband's subsequent creditors, and her equity relates back to the time when the conveyance ought to have been made, by the terms of the agreement.

8th. Whether the agreement, when executed, is to be re-garded as a voluntary settlement, or a purchase, the right of the defendant Catherine is in equity to be preferred to the claim of the plaintiff who is a subsequent judgment creditor.

There was one other question of fact raised in the case, which is entitled to notice. There was some evidence that $75 in money had been loaned by George Remerschneider to one Timmerman, upon a note payable to the former, and that after the plaintiff's action was commenced the note was changed, and a new note given and made payable to the wife. This fact was also explained by the uncontradicted testimony of the defendants. Both George and Catherine Remer-schneider testify that the money was Catherine's; that it was loaned by her personally. That Timmerman, the bor-rower, drew the note and delivered it to her; that she could not read writing; that without her knowledge it was made

Hague *v.* Powers.

payable to her husband; that she did not know of the error until afterwards informed of it; and when so informed she immediately had it corrected. The plaintiff did not offer evidence to show from what source the money came. She testified that a part of it was given to her by her brother, and the remainder she earned. She does not state when; but says none of it was her husband's, and this evidence, without explanation, is satisfactory. The onus was on the plaintiff. This evidence fails to prove that her husband was the owner.

The plaintiff's complaint must therefore be dismissed, with costs.

[SCHENECTADY SPECIAL TERM, March 3, 1863. *Potter*, Justice.]