# Evans, Fite, Porter & Co. *v.* Covington.

*Bill in Equity by Judgment Creditor, to subject Equitable Interest in Lands.*

1. *Common law; presumed existence elsewhere.*—In the absence of proof to the contrary, the common law will be presumed to prevail in South Carolina, when the parties resided there at the time their rights of property accrued.

2. *Gift to wife, and property accruing during marriage.*—At common law, a gift or advancement to a daughter on her marriage, not limited to her sole and separate use, was a gift to the husband; and personal property accruing to her by operation of law during marriage, as her distributive share of her father's estate, when reduced to possession by her or her husband, vested absolutely in the husband.

3. *Earnings of wife; gift by husband to her.*—At common law, the earnings of the wife were the property of the husband, as absolutely as the fruits of his own industry and economy; and while he might give them to his wife, creating in her an equitable estate, such gift would not be valid as against his existing creditors; nor can such gift, created by mere verbal declarations, be established in equity against his subsequent creditors, when it appears that the husband retained and used the money in his business,, giving the wife no receipt, or written evidence of indebtedness, without objection on her part, and without the assertion of any claim by her until after the lapse of fourteen or fifteen years, when the claims of creditors had accrued, and the husband had become embarrassed with debt, if not in fact insolvent.

APPEAL from the Chancery Court of Blount.
Heard before the Hon. THOMAS COBBS.

HAMILL & DICKINSON, for appellants, cited authorities col-

[Evans, Fite, Porter & Co. v. Covington.]

lated in Brickell's Digest, vol. 1, p. 349, § 9; *Ib.* 72–3, §§ 51–65; *Bell v. Bell's Adm'r*, 36 Ala. 466; same case, 37 Ala. 536; *Williams v. Maull*, 20 Ala. 721; *McAnally v. O'Neal*, 56 Ala. 300.

BRICKELL, C. J.—The appellants, judgment-creditors of Richard Covington, having exhausted legal remedies, filed the original bill, alleging that said Richard, in the name of his wife, Mary S., purchased a tract of land from one Harper Morton for the sum of thirteen hundred dollars, of which nine hundred and fifty dollars had been paid, the legal title remaining in said Morton, who had given bond for the making of the title to said Mary S., on the full payment of the purchase-money. So much of the purchase-money of said lands as had been paid was paid by said Richard. The prayer of the bill is, that the equitable interest of said Richard in said lands be subjected to the payment of complainant's judgment.

The defendants, Richard and Mary S., answer, that said lands were purchased by said Mary S. in her own name, and for her own use; and state that so much of the purchase-money, as has been paid, was paid by her, with her own moneys. The moneys, it is stated, were in part derived from the distribution of her father's estate, in part from moneys earned by her by her personal labor, while her husband was absent from home, in the military service of the Confederate States, and a part was derived from the cultivation of the lands.

The evidence shows that, in 1859, the said Richard and Mary S. resided in South Carolina, and were there married. On the marriage, her father gave her, in money, two hundred dollars. Subsequently, they removed to this State, and remained here until 1861, when they removed to South Carolina, remaining there until 1866, when they removed again to this State. In 1863, the father of Mary S. died in South Carolina, and from the distribution of his estate she received a wagon, valued at ninety dollars, and moneys amounting to four hundred and fifty dollars. During the late war, in the absence of her husband, the wife accumulated about one hundred dollars from her personal labor, which the husband said she "should have to do with as she pleased." These moneys passed into the possession of the husband, and were used by him in business in which he was engaged; and claim to them by the wife was not made known, or asserted, until the contract of purchase was made. This contract was made during the pendency of the suit at law against the husband, in which the appellants obtained judgment. Part of the purchase-money was paid at the time the contract was made, and the other payments were made after the return of execution "No property found." The contract

[Evans, Fitc, Porter & Co. v. Covington.]

of purchase was made by the husband, the wife being present; and the payments of the purchase-money were made by him. Two hundred and fifty dollars of the payments made was derived from the cultivation of the lands.

That the purchase of the lands was intended for the benefit of the wife, and, as between her and the husband, might so enure, is not a material question. As against the rights and claims of the existing creditors of the husband, the equity of the wife can not be supported, unless the moneys employed in the purchase were her moneys—moneys of which she had the sole, separate ownership. The legal ownership of the moneys, assuming they were derived from the sources stated, is the important inquiry.

The marriage occurred in South Carolina, while the parties resided there; and in the absence of evidence to the contrary, it must be presumed the common law was there of force, regulating and controlling the *status* of husband and wife, and defining the rights to property resulting from the marriage. By that law, an advancement or gift to a daughter on marriage, not limited to her separate use, was a gift to the husband. Waiving the objection that the evidence of the gift of two hundred dollars to Mrs. Covington on her marriage, by her father, is not in correspondence with any allegation of the answer, this money became the property of the husband. Not being limited to her separate use, she did not acquire ownership of it.—*Olds v. Powell*, 7 Ala. 652.

The moneys derived from the distribution of her father's estate, accrued to her, and were received, while she and her husband were residing in South Carolina; and presuming the common law there prevailed, on being reduced to possession of either husband or wife, by operation of law, became the property of the husband.—*McAnally v. O'Neal*, 56 Ala. 299; *Bell v. Bell*, 37 Ala. 536.

At common law, the earnings or savings of the wife were as absolutely the property of the husband, as the fruits of his own industry and economy. By gift, he could create in the wife an equitable estate in them. The evidence of the gift must have been clear, and it must have been apparent the husband intended to divest himself of all right to them, and to set them apart to the separate use of his wife.—*McLemore v. Pinkston*, 31 Ala. 266; *Shaeffer v. Sheppard*, 54 Ala. 244; *Carleton v. Rivers, Ib.* 467. Though the husband may have said the wife should have the moneys she had earned, "to do with as she pleased," yet he took them into possession, and used them in business as his own, not giving to the wife any evidence that he assented to her separate ownership of them, nor any evidence that for them he was indebted to her. It was not, so far as is

[Nooe's Executor v. Garner's Adm'r.]

shown by the evidence, until after fourteen or fifteen years had elapsed, and he was pressed with debt, if not insolvent, that she made claim to them, or that he recognized the claim. A secret gift, to operate against the claims of creditors, must be proved by evidence of a different character from this; evidence freer of all suspicion, and more incapable of being fabricated to meet pressing emergencies.

The evidence not showing that the moneys paid on the purchase of the lands was the property of the wife, but showing that, in contemplation of law, they were the moneys of the husband, she is without an equity which can prevail over the rights of the creditors of the husband. The consequence is, the decree of the chancellor must be reversed, and a decree will be here rendered, granting the appellants appropriate relief.