# Carter *v.* Worthington & Smith.

*Bill in Equity by Judgment Creditors of Husband, assailing Conveyances to Wife as Fraudulent.*

1. *Earnings of wife.*—At common law, the earnings of the wife, or such property as she acquired by her labor, skill and economy, belonged to the husband; and this rule prevailed with us until the passage of the late statute approved February 28th, 1887, defining the rights and liabilities of husband and wife, which has no application to this case.

2. *Same; release or gift by husband.*—The husband may, by contract founded on sufficient consideration, release the wife's earnings to her, or by gift invest her with a separate estate in them; and such gift or renunciation of his marital rights will, in the absence of fraud, be valid against all the world except his existing creditors, as to whom it is regarded as any other voluntary conveyance.

3. *Ante-nuptial agreement as to wife's business, and profits accruing.* An ante-nuptial agreement, by which it is stipulated that the husband shall not interfere with the business carried on by the wife, and shall not receive any of the profits accruing from it, if not reduced to writing, is void under the statute of frauds, so far as it was made in consideration of the intended marriage (Code, § 2121, subd. 4), and will not support a post-nuptial settlement founded on it.

4. *Lands purchased with wife's money, or profits of her business; liability to debts of husband.*—Lands purchased and paid for by the wife, with the profits and earnings derived from business carried on by her in her own name, which have become a part of the *corpus* of her statutory estate, can not be subjected by the husband's creditors, though the conveyance was executed after the accrual of their debts, the date of its execution being material only as affecting the burden of proof; and where the consideration of the conveyance is an account for goods sold after the accrual of the complainants' debt, which were the accretions of her business, constituting a part of the *corpus* of her estate, it can not be considered as her subsequent earnings, and can not be subjected to the payment of the debt,

[Carter v. Worthington & Smith.]

APPEAL from the Chancery Court of Madison.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 11th January, 1885, by Worthington & Smith, partners doing business as merchants in Nashville, Tennessee, against Landon Carter and his wife, Mrs. Henrietta Carter; and sought to subject to the payment and satisfaction of a judgment, which the complainants had recovered against said Landon Carter, several small lots or parcels of land, which had been conveyed to Mrs. Carter, on the ground that the consideration was paid with the earnings of the wife, and the conveyances were therefore voluntary and void as against the creditors of the husband. The material facts relating to the several conveyances, and also to the complainants' debt, are stated in the opinion of the court. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainants, holding that the conveyances were voluntary, and subjecting the lands to the satisfaction of the complainants' judgment; and his decree is now assigned as error.

SHELBY, WALKER & SPRAGINS, for the appellants, cited *Wing v. Roswald*, 72 Ala. 346; *Sharp v. Sharp*, 76 Ala. 312; *Patterson v. Kicker*, 72 Ala. 406; 2 Bishop, M. W., § 420; 3 Pomeroy's Equity, 25; *Oglesby v. Hall*, 30 Geo. 387; *Kee v. Vasser*, 2 Ired. Eq. 553; *Peterson v. Mulford*, 36 N. J. Eq. 487; *Elliott v. Bentley*, 17 Wisc. 594; *Rivers v. Carlton*, 50 Ala. 40; Wells, Sep. Prop. M. W. 174.

BRICKELL, SEMPLE & GUNTER, and HUMES & SHEFFEY, *contra*, cited *Pinkston v. McLemore*, 31 Ala. 308; *McLemore v. Nuckolls*, 37 Ala. 662; *Gordon v. Tweedy*, 71 Ala. 214; *Glaze v. Blake*, 56 Ala. 385.

SOMERVILLE, J.—The appellees having recovered a judgment against Landon Carter, one of the appellants, in February, 1882, for an amount between four and five hundred dollars, in July, 1885, they filed this bill, for the purpose of subjecting to its payment three separate parcels of land which had been purchased by his wife, and conveyed by deed to her, Mrs. Carter, as follows: the *first*, from one Donegan, on October 31, 1877; the *second* from one Patton, on September 21, 1876, and the *third* from one Newman, on April 27, 1877.

The theory of the bill is, that the consideration paid by the wife for these lands belonged to the husband, being, as is alleged, the profits of her skill and labor accruing from her having carried on the trade or business of a milliner;

[Carter v. Worthington & Smith.]

and that, for this reason, the conveyances were void as against the appellees, who were creditors at the time each of these conveyances was made, and, as is contended, also when a portion of such alleged earnings accrued. The account upon which the judgment was rendered accrued for goods sold to Mrs. Carter and used by her in her millinery business, the items of the account ranging between the dates of March 12, 1873, and November 13, 1874. Originally amounting to over two thousand dollars, this debt was reduced by the credit of sundry payments, to the sum merged in the judgment.

Apart from statutory provisions on this subject, the rule of the common law was, that the earnings of the wife—or such property as she acquired by her labor, skill, or economy—belonged to her husband, the law regarding her merely as his servant. This rule prevailed in this State unabrogated, until the recent act of the General Assembly, approved February 28, 1887, defining, upon new principles, the rights and liabilities of husband and wife.—Acts 1886-87, p. 80; *Gordon v. Tweedy,* 71 Ala. 202; *Evans v. Covington,* 70 Ala. 440; *Carleton v. Rivers,* 54 Ala. 467.

But the husband may contract with her, upon a sufficient consideration, to release such earnings, or he may by gift invest her with a separate estate in them; and such renunciation of his marital right, in the absence of actual fraud, will be upheld as valid, except as against *existing* creditors, who may avoid such gift as they could any other voluntary transfer or conveyance.—*Wing v. Roswald,* 74 Ala. 346; *Pinkston v. McLemore,* 31 Ala. 308; *Cahalan v. Monroe,* 70 Ala. 271. All that is required to this end is, that "the evidence of the gift must have been clear, and it must have been apparent the husband intended to divest himself of all right to them, and to set them apart to the separate use of the wife."—*Evans v. Covington,* 70 Ala. 440, 442; *Shaeffer v. Sheppard,* 54 Ala. 244. The essence of the whole transaction is the assent of the husband, clearly and satisfactorily manifested; and this may be shown by evidence that the husband permitted the wife to carry on a trade or business, in her sole name, and on her sole account, without any participation or interference on his part.—2 Bish. Married Women, § 420; Tyler on Infancy and Coverture, 483.

The evidence shows that Mrs. Carter was engaged in carrying on the millinery business prior to her marriage, which occurred as far back as December, 1852. Both she and her husband testify, that there was an ante-nuptial parol agreement between them, to the effect that he was to having nothing to do with the business, and receive none of the profits

[Carter v. Worthington & Smith.]

accruing from it. This, however, so far as it may be regarded as a promise or agreement made upon consideration of marriage, was void under the Statute of Frauds, because not in writing.—Code, 1876, § 2121. A settlement made by the husband after marriage, in consideration of such parol agreement, must be deemed to be without legal consideration to support it, and to stand therefore upon the same basis as if it were purely voluntary.—*Anderson v. Jones*, 10 Ala. 400 ; *Randall v. Morgan*, 12 Ves. 67 ; *Dygert v. Remerschnider*, 32 N. Y., 629 ; s. c., 39 Barb. 417 ; *Borst v. Corey*, 16 Barb. 136 ; Bump on Fraud. Con. 312. We place no stress, therefore, upon this alleged parol ante-nuptial agreement, as no rights can be derived from, or claimed under it, as against creditors existing when the earnings of the wife accrued, if the property in question can be regarded as such. It can only be looked to in corroboration of the husband's subsequent alleged renunciation of his marital rights as to the wife's earnings in her trade. But, as observed by Lord Mansfield in *Jarman v. Walloton*, 3 Term Rep. 620, "whether by any means a man might before marriage put his intended wife in a situation to carry on a separate trade, there was no authority he might not do so."

We entertain no doubt as to the correct *status* of the two first named parcels of land conveyed to Mrs. Carter ; the one from Patton, in September, 1876, and the other from Donegan, in October, 1877. Taking the view most favorable to the appellees, these lands are shown to have been paid for by profits and earnings of Mrs. Carter, derived from her trade as a milliner, prior to the accrual of appellees' debt. These profits and earnings were accounts due her for goods sold and work done in her regular line of business, and constituted a part of her separate estate, by reason of the assent of her husband that they should be hers and enure to her separate use ; if not also for the reason that they were the profits and accretions of a previous stock of goods constituting her separate estate, whether equitable or statutory it would be immaterial. If the consideration paid for the land was the wife's, the fact that the several conveyances were made after appellees became creditors of the husband, would in no manner affect the validity of the transaction. The date of the conveyances would be immaterial, except as affecting the burden of proof. The controlling test would be, was the consideration paid to the grantors the property of the wife ?—*Wing v. Roswald*, 74 Ala. 346, *supra*. The evidence shows that it was ; and it follows that the chancellor erred in decreeing the sale of these two par-

22

cels of land for the satisfaction of the judgment debt of the appellees.

The land conveyed to Mrs. Carter by Newman, on April 26, 1877, stands on a different basis. The consideration paid for this was an account due Mrs. Carter for goods sold by her to the grantor, the items of which accrued between August, 1876, and January, 1883, or *after* the accrual of the debt due the appellees. How far any of these goods were enhanced in value by the personal skill or labor of the wife, is not shown. That they were a part of the separate estate of the wife, can scarcely be doubted. She had been engaged in the millinery business as a sole trader, by permission of her husband, for about twenty years prior to the accrual of appellees' claim in 1873 or 1874. Her capital, at first, consisted of borrowed money, in which her husband neither had nor claimed any interest. The accretions to this, as we have seen, became her separate estate, whether derived from sales at a profit or otherwise; and up to the time appellees became creditors of the husband, they were without any legal rights to challenge the validity of prior gifts to her from him. The reason is, that such gifts were taken from no fund liable to pay the complainants' demand. It is not made to appear, then, that the goods sold to Newman by Mrs. Carter, as itemized in this account, were the proceeds of the wife's earnings, or resulted from her skill or industry applied *after* the debt of the appellees accrued, although the goods were sold after this date. It is only the gift of *earnings* acquired after this date which can be assailed as fraudulent, on the ground that they belong to the husband, as against the appellees in their capacity of complaining creditors.—*McLemore v. Nuckolls*, 37 Ala. 662. These goods were not, properly speaking, the earnings of the wife's labor given to her by her husband after this date. They were rather accretions to her separate estate which had already accumulated, resulting from the sale of such estate at a profit, and brought about by her industry with the permission of the husband. Profits of this kind, like rents and interest, constitute, when accumulated in the wife's hands, and sometimes even in her husband's, a part of the *corpus* of her separate estate, whether equitable or statutory; " although, if the husband had once converted them to his own use, he would be under no obligation to account to the wife for them, and a repayment of them would be fraudulent and void as to existing creditors." *Wing v. Roswald*, 74 Ala. 346. The proceeds of sale of the wife's separate estate, when re-invested, still remain her separate estate. And this result can not be changed, whether

[Gardner v. Ingram.]

the sale be made by the industry of the husband or that of the wife, nor by the amount of profit reaped by the sale. The husband may lawfully spend his own personal labor in improving the wife's estate, without any fraud on his creditors.—*Holt v. Sorrell*, 11 Ala. 386. He may, with equal right and justice, permit the wife to enhance her own property by her personal industry; and no creditor can complain of the act as a fraud on his rights.—*Sharp v. Sharp*, 76 Ala. 312; *Allen v. Terry*, 73 Ala. 123; *Crockett v. Lide*, 74 Ala. 301; *Lee v. Tannenbaum*, 62 Ala. 501.

It results from these principles, that the chancellor erred in the decree condemning the lands to the payment of the judgment of the complainants. The decree is, therefore, reversed, and a judgment will be rendered in this court dismissing the bill.