# Elam, *et al. v.* A. P. Brewer Lumber Company, *et al.*

*Bill to Declare a Deed Fraudulent.*

(Decided January 11, 1912. 57 South. 483.)

1. *Evidence; Hearsay.*—In a suit by the creditor against the husband to set aside a deed from the husband to the wife to real estate purchased and paid for by him where there was evidence that $600 was paid to the vendor as first payment, it was competent for the father of the husband and executor of the deceased wife to

[Elam, et al. v. A. P. Brewer Lumber Company, et al.]

testify that she gave him $500 and that he returned the money and loaned her $100 to make the first payment, although he was not present when the money was paid.

2. *Same.*—Evidence as to how the wife earned the money that was paid to the vendor and as to a third person obtaining a loan thereof to make payment on the land was not incompetent as hearsay.

3. *Same.*—Evidence that a witness knew the time when the wife bought the land was admissible to fix the date and was not objectionable as hearsay.

4. *Fraudulent Conveyance; Husband and Wife; Evidence.*—In a suit by the creditor of a husband to set aside a deed as fraudulent, land purchased and paid for by him, but deeded to the wife pursuant to his direction, it was competent to show that about the time the land was bought the wife said that she would like to get a place and that she had some money to make a payment, as tending to show that the wife was contemplating purchasing land at the time this land was purchased.

5. *Same.*—Where money paid for land by the husband was the money of the husband, and the legal title was taken in the name of the wife as a mere dummy used to defraud future or existing creditors of the husband the conveyance will be set aside at the suit of the creditors of the husband.

6. *Same; Nature of Transfer.*—A creditor may reach funds fraudulently attempted to be placed beyond the reach of creditors and invested in lands before it becomes a bona fide homestead.

(Simpson, J., dissents in part.)

APPEAL from Bibb Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by A. P. Brewer Lumber Company and another, against L. P. Elam and another, to declare a deed fraudulent and void as to creditors, and to set the same aside. From a decree granting relief, respondents appeal. Affirmed.

S. D. LOGAN & SON, W. H. WRIGHT, and W. W. QUARLES, for appellant. All the data before the Chancellor being before the Supreme Court, this court should weigh the evidence and render such judgment as seems proper.—*Glover v. Hill*, 85 Ala. 41; *Wallon v. Montague*, 121 Ala. 287; *Claflin v. Muscogee Co.*, 127 Ala. 376; *Meyrovitz v. Glasser*, 132 Ala. 103; *Shows v. Folmar*, 133 Ala. 599; Sec. 5954, Code 1907. The evidence is

without dispute that neither L. T. nor Nancy J. Elam owed any debts, had any existing creditors, or was insolvent at the time of transactions involved, and the burden to show this by clear and satisfactory proof was on complainant.—*Russell v. Davis,* 133 Ala. 649; *Jones v. Nolan,* 133 Ala. 567; *Deposit Bank v. Coffee,* 135 Ala. 208; *Allen v. Riddle,* 141 Ala. 621. Under the evidence Nancy Elam was in equity the owner of the land.— *Cochran v. Adler,* 121 Ala. 442. The husband had a perfect right to give the purchase money to his wife if solvent at the time and subsequent creditors could not complain of such disposition.—*Walton v. Adkinson,* 84 Ala. 592; *Banks, et al. v. Edwards,* 88 Ala. 382; *Carter v. Worthington,* 82 Ala. 334; *Wing v. Roswald,* 74 Ala. 346; *Lammons v. Allen,* 88 Ala. 417. Where a transaction is susceptible of two constructions, the one will be adopted which will support it.—*Harrell v. Mitchum,* 61 Ala. 370; *Thames v. Rembert,* 63 Ala. 561; *Yeend v. Weeks,* 104 Ala. 340; *Lawson v. Ala. Warehouse Co.,* 73 Ala. 293. The land was the homestead of Elam, and creditors have no interest in it.—*Bank v. Brown,* 128 Ala. 560; *Kennedy v. Bank,* 107 Ala. 170; *Pollack v. McNeal,* 100 Ala. 203. In order to reach the deed in this case it must be shown that the transaction was in anticipation of future indebtedness, and to defraud future creditors.—54 S. E. 480.

LAVENDER & THOMPSON, for appellee. Mere general denials are not sufficient as answers to a bill of this character.—*Wood v. Riley,* 121 Ala. 100; *Wimberly v. Montgomery Co.,* 132 Ala. 113; *Penny v. McCullough,* 134 Ala. 588. The conveyance here assailed is void as against the husband's creditors.—*Watts v. Burgess,* 131 Ala. 333; 5 Mayf. 477. The burden was on the grantee to show to the reasonable satisfaction of the court that

it was a bona fide transaction.—*Wimberly v. Montgomery Co., supra; Russell v. Davis,* 133 Ala. 647; *Norwood v. Washington,* 136 Ala. 657. The executor of the wife could not testify as to any transaction with or statement made by her.—Section 4007, Code 1907; *McDonald v. Harris,* 31 South. 548. This case should be affirmed. —*Planters Bank v. Walker,* 7 Ala. 926; *Seals v. Robinson,* 75 Ala. 363; *Allen v. Caldwell,* 149 Ala. 293.

SIMPSON, J.—The bill in this case is filed by the appellees to set aside, as fraudulent, a deed made by W. H. Cooper and wife to Nancy J. Elam, who was the wife of L. T. Elam, on the ground that the property in question was bought by said L. T. Elam, paid for with his money and the conveyance directed by him to be made to his said wife, for the purpose of hindering, delaying, or defrauding his creditors.

The defense set up is that although L. T. Elam (the husband) negotiated the original transaction for the purchase of the land in 1904 for $1,800, of which $600 was paid in cash, at the time of the purchase, and although, at that time, he said nothing to Cooper about his acting for his wife, yet he was purchasing for his wife, made the first payment of $600 with money belonging to his wife; that all subsequent payments were made by the wife out of her own moneys, and the deed finally made to her, under his instructions. There was no writing at the time of the original purchase. Subsequently Cooper made out a title bond in the name of L. T. Elam, who testifies that he refused to receive the same because not made to his wife. There is a conflict between his testimony and that of another witness as to whether such a conversation took place, but the evidence shows that said title bond was never delivered to him, according to the testimony of respondents, and the vendor,

Cooper, says that he delivered it either to L. T. Elam or to said witness. At the time of the second payment, in October, 1905, L. T. Elam instructed the vendor to make the deed to his wife—Nancy J. Elam—and a deed to her was drawn up, signed, and acknowledged on January 4, 1906, but was not delivered until the time of the last payment in March, 1907. The indebtedness to the complainants accrued after the 4th day of January, 1906, but before the final delivery of the deed in 1907, and the evidence shows that in 1904, and until after January 4, 1906, said L. T. Elam was not indebted to any one, except that on the 20th day of July, 1904, said L. T. Elam, as one of the sureties for Simmons Lumber Company, signed a replevy bond, in the case of *Simmons Lumber Co. v. A. P. Brewer Lumber Co.,* one of the complainants in this suit which was afterwards forfeited

A. L. Elam, the father of L. T. Elam, who is also the executor of Nancy J. Elam, who has died since the commencement of this suit, testified that said Nancy J. Elam paid for the property; that she gave him $500 to keep for her in 1902; that she had $100 when she was married; that she had at least $250 realized from cotton raised by her on the place in controversy; that she also sold chickens and eggs; that the cotton was ginned at his gin, and he paid her the money for same; that he loaned her $100 to make out the $600 for the first payment; that he borrowed $600 from George Mitchell, he and Nancy J. Elam signing the note, to make the second payment, and that he subsequently repaid the money to George Mitchell; that he furnished $200 and Albert Elam $400 to said Nancy J. Elam to make the third and last payment; that the deed to Nancy J. Elam was delivered to him by Cooper for her; that at that time J. L. Elam was "on the

scout," "a fugitive from justice," on account of certain indictments against him for the illegal sale of whisky; that the last payment, including interest, was paid in latter part of 1906, or early in 1907; that Nancy J. Elam built the house on the place, with money derived from her rents, a few months after the place was bought; that he was not present when any of the payments were actually made, except as to $215 or $220 interest which he paid, when the deed was delivered; that at the time this property was bought said L. T. Elam owned also a storehouse, and about 220 acres of other land, with a sawmill on it, and a good deal of personal property; and that L. T. Elam conveyed that property to his wife about the time the deed to the property in question was delivered. George W. Mitchell, a brother-in-law of A. L. Elam, corroborated his statement as to borrowing the money from Mitchell to make payment on the land, and as to the repayment of the money by said A. L. Elam. J. W. Logan testified that, about the time that Nancy J. Elam bought the land in question, she told him she would like to get a place in that locality, and that she had some money to make a payment on it. L. T. Elam testified that his wife bought the land from Cooper; that not a dollar of the purchase money was paid by him; that he made the trade with Cooper for her; that she had some money when he married her; that she had cotton patches every year; that his father furnished to her a little of the money; that she and his father borrowed the money to make the second payment from George Mitchell; that he made the payments to Cooper for his wife, with her money except the last payment; that he did not owe anything at the time the trade was made in 1904, nor at the time the deed was acknowledged in 1906; that his wife had borrowed $400 or $500 after the first payment, which money and also

the $600 they got from George Mitchell was placed to
his account at the bank and he checked it out to make
the payments, and the same is true as to the money fur-
nished by his father and brother to make the last pay-
ment; that he did not have anything to do with the in-
terest payment; that the other land which he conveyed
to his wife was subject to a mortgage which was after-
wards foreclosed; that his bankrupt proceedings are
still pending. W. A. Elam, a brother of L. T. Elam,
testified that he knew that Nancy J. Elam had money
of her own; that he was present when she delivered $500
to his father to keep for her, also when his father re-
turned the money to her, and she said she wished to
make payment on the land she had bought from Cooper,
that he let her have $400 to make the last payment; that
Lem was "on the scout" at that time; that Nancy J.
Elam was an industrious, business woman, and Lem
was careless and drinking.

No attempt is made to impeach any of the witnesses
on the part of the respondents nor to controvert any of
the facts testified to by them, except the single fact
that the bond for title was made by Mr. Ellison and
offered by him to L. T. Elam, the complainants relying
upon the general fact that L. T. Elam said nothing
about his wife when he made the first negotiation for
the purchase of the land, that he was the active agent
in making the first and second payments, and that he
was engaged in a hazardous business which would sug-
gest a desire to protect himself against creditors, and
the fact that the witnesses were parties connected by
blood or marriage with L. T. Elam or his said wife. The
only objections made to the testimony of A. L. Elam
are that it is hearsay, and the witness was not present
when the money was actually paid to Cooper. While
there may be some hearsay statements in his testimony,

yet it is not hearsay that she gave him the $500 to keep for her, that he returned the money and loaned her $100 for the purpose of making the first payment at the time when other evidence shows that it was actually paid, nor the facts as to how she made the money hearsay, nor is the testimony of Mitchell hearsay, as it was a part of the transaction of borrowing the money from him and tends to corroborate the testimony of A. L. Elam.

As to the testimony of J. W. Logan, the motion was to exclude his entire testimony in chief. It certainly was not hearsay that he knew about the time she bought the land, as that is a matter that may always be proved in this way for the purpose of fixing a date, and the conversation which he had with Nancy J. Elam was admissible as a circumstance tending to show that she was contemplating purchasing the land at the time it was purchased. His statement on cross-examination that he does not know who bought the land does not show that he did not know what he testified about, but only that he does not know what is the legal result of the transaction, which is a question of law to be determined by the court.

The majority of the court, consisting of ANDERSON, McCLELLAN, MAYFIELD, SAYRE, and SOMERVILLE, JJ., are of the opinion, as expressed by Justice ANDERSON, that the decree of the chancery court must be affirmed. They think that the reasonable inference to be drawn from the evidence is that the money paid for the land was the husband's, and that the wife was a mere dummy or "man of straw," used for the purpose of deceiving and defrauding the creditors of the husband—future, as well as existing ones. They are also aware of the rule that creditors cannot complain of a disposition by a debtor of exempt property—that is, property not subject to their claims—but do not think that the bill proceeds

upon the theory of setting aside a conveyance of exempt
property by the debtor, as it seeks to reach funds, or the
proceeds of same, fraudulently attempted to be placed
beyond the reach of creditors and invested in land be-
fore it became a bona fide homestead. Consequently the
decree of the court must be affirmed.

The writer expresses his opinion in dissent as follows:

There are certain general principles that are settled,
to wit: When a voluntary conveyance is attacked by a
creditor existing at the time of the conveyance, no proof
of actual fraud is needed, as the deed is void as to ex-
isting creditors. When a voluntary conveyance is made
it is valid as to subsequent creditors, unless fraud in
fact be shown, and the burden is on the complainant
to show it, and as the donee has paid no consideration,
it is not necessary to connect him with the fraud.—*Seals
v. Robinson,* 75 Ala. 364, 369, 370; *Allen et al. v. Cald-
well, Ward & Co.,* 149 Ala. 293, 297, 298, 42 South. 855.
When a conveyance is attacked by creditors who were
such at the time of the execution of the conveyance, the
burden is upon the vendee to prove that the conveyance
was supported by a valid, valuable consideration.—
*Walton, Whaun & Co. v. Atkinson & Co. et al.,* 84 Ala.
592, 4 South. 681. Transactions between husband and
wife are closely scrutinized, and, as to existing credi-
tors, a deed made by a vendor to the wife under instruc-
tions by the husband is presumed to have been paid for
by the husband, thus placing upon the wife the burden
of proving an adequate consideration; yet, as to subse-
quent creditors, the burden is on the creditor to show
either that there was no consideration, or that the deed
was made for the purpose of hindering, delaying, or
defrauding creditors.—*Walton, Whaun & Co. v. Atkin-
son & Co. et al., supra; Bangs, Bard & Co v. Edwards,*
88 Ala. 382, 6 South. 764; *Watts et al. v. Burgess &*

*Co.,* 131 Ala. 333, 337, 30 South. 868;*Silvey & Co. v. Vernon and Wife,* 153 Ala. 570, 45 South. 68, 127 Am. St. Rep. 69. In a suit to set aside a conveyance as fraudulent against creditors, if the payment of a valuable consideration is shown, the burden is on the complainant to show a fraudulent intent and that it was known to the grantee.—*Allen et al. v. Riddle,* 141 Ala. 621, 626, 37 South. 680, and cases citd; *Chandler Bros. v. Higgins,* 156 Ala. 511, 515, 47 South. 284.

Under our statutes, as they have existed since 1886, the earnings of the wife belong to her separate estate, and, if the husband has converted the same, he can convey property to her in payment or reimbursement of the same, just as he could to any other creditor, and lands purchased by her earnings cannot be subject to the husmand's debts, though the conveyance was executed after the accrual of the debts.—*Carter v. Worthington & Smith,* 82 Ala. 334, 2 South. 516, 60 Am. Rep. 738. In the case of *Bangs, Bard & Co. v. Edwards, supra,* a conveyance made by a third party to the wife, at the instance of the husband, was sustained against creditors on the testimony of the husband and wife that she had lent the proceeds of her earnings to her husband until she could purchase a house and lot, and that the husband had paid for the land purchased in merchandise from his store.—88 Ala. 386, 387, 6 South. 764. In the case of *Wing v. Roswald,* 74 Ala. 346, 349, a conveyance to the wife was sustained against creditors on the testimony of the husband and wife and the wife's father; this court saying: "It is true that we find some contradictions in the details of appellees' evidence as to dates and perhaps amounts; but the essential facts of the case are not shaken to such an extent as to authorize us to stamp them as a sheer fabrication, having

their origin in the wicked motive of perjury on the part of the husband, the wife, and the wife's father."

In the present case it cannot make any difference when the deed was actually delivered. The real transaction was when the husband directed the title to be made to his wife. As said in the case of *Carter v. Worthington & Smith, supra*: "The controlling test would be, Was the consideration paid to the grantors the property of the wife?"—82 Ala. 337, 2 South. 517, 60 Am. Rep. 738. In fact, even if the purchase had been made by the husband and nothing said about the wife, if, in fact, the property was paid for by her funds, not only could the husband have conveyed it to her in payment of the debt, but he could have been forced to do so. Whether the burden of proof was on the one or the other, in the absence of evidence to the contrary, we cannot presume that the testimony of the respondents is a fabrication, and accordingly we hold that under the evidence the property in question was paid for with the money of Nancy J. Elam, and the deed to her was valid. In addition to what has been said, the evidence in this case shows that the land in question was a homestead, and that at the time of its purchase it was worth only $1,800; and while there is evidence tending to show that, after the said Nancy J. Elam, had placed a house upon it, to wit, when the testimony in this case was taken, the property was worth $4,000 or $5,000, yet, if it was a homestead worth only $1,800 at the time the husband directed the title to be conveyed to his wife, it would not matter who paid the purchase money.

Affirmed.

ANDERSON, MCCLELLAN, MAYFIELD, SAYRE, and SOMER-VILLE, JJ., concur. SIMPSON, J., dissents. DOWDELL. C. J., not sitting.