# Watts *et al.* v. Burgess & Co.

*Bill in Equity to cancel a Deed as Fraudulent as against Existing Creditors.*

1. *Conveyance to wife; void as against existing creditors; burden of proof as to consideration.*—A conveyance of land executed to the wife of a debtor by a third party, at the instance of the husband who had paid the purchase money, is void as against the latter's existing creditors, and when assailed by them the burden is upon the wife of proving that the consideration did not move from the husband, but was paid with her separate funds and not with the funds of her husband, directly or indirectly; and in order to meet this burden the wife must affirmatively aver in her answer and clearly and fully show by her evidence the actual payment of the consideration, in what it consisted and how it was paid.

APPEAL from the Chancery Court of Marengo.
Heard before the Hon. THOS. H. SMITH.

[Watts *et al.* v. Burgess & Co.]

The facts of the care are sufficiently stated in the opinion.

J. N. MILLER, for appellants, cited Wait on Fraudulent Conveyances, 215; *Rand v. Gibson*, 109 Ala. 266; *Clewis v. Malone*, 119 Ala. 312; *Elyton L. Co. v. Vance*, 119 Ala. 315; *Eufaula G. Co. v. Petty*, 116 Ala. 220; *Bellamy v. Thornton*, 103 Ala. 400; *Goetter v. Smith*, 104 Ala. 481.

WILLIAM CUNNINGHAME, *contra.*—When the husband buys lands, taking the title in the name of his wife, but paying the purchase money with his own funds, the conveyance is fraudulent and void as to existing creditors. *Kelley v. Connell*, 110 Ala. 543; *Peevey v. Cabaniss*, 70 Ala. 253; *Ruse v. Bromberg*, 88 Ala. 619; *Bangs v. Edwards*, 88 Ala. 382; *Lammons v. Allen*, 88 Ala. 417; *Wood v. Riley*, 121 Ala. 100; *Stoutz v. Huger*, 107 Ala. 248.

When the conveyance is from the husband to the wife the onus is on her to clearly and fully prove that she paid for the property with her separate funds.—*Wood v. Riley*, 121 Ala. 100; *Robinson v. Mosely*, 93 Ala. 70; *Bangs v. Edwards*, 88 Ala. 382; *McTeers v. Perkins*, 106 Ala. 411; *Martin v. Berry, Demoville & Co.*, 116 Ala. 233.

In the absence of proof the presumption is that the husband furnished the means of payment; clear and full proof must be made that she paid for it with her own separate funds.—*Wood v. Riley*, 121 Ala. 100; Bump on Fraud. Con., p. 318; Wait on Fraud. Con., § 308; *Booker v. Waller*, 81 Ala. 549; *Lammons v. Allen*, 88 Ala. 417; 8 Am. & Eng. Ency. Law, p. 765, note; *Kelley v. Connell*, 110 Ala. 543; *Seitz v. Mitchell*, 94 Ala. 580; *Wedgworth v. Wedgworth*, 84 Ala. 274.

HARALSON, J.—Bill to set aside as fraudulent, a deed to certain lands, by G. A. Watts to his wife, M. E. Watts.

On January 24th, 1895, G. A. Watts was indebted to complainants, Burgess & Co., in the sum of $856.86, as

evidenced by his promissory note of that date, due November 1, 1895. In March, 1897, complainants brought suit' on this debt, in Marengo circuit court, and at the June Term following, obtained a judgment against Watts for $514,—the balance due on the debt, and costs of suit. Execution was duly issued on this judgment, and placed in the hands of the sheriff, who returned it, "no property found," on the 14th October, 1897.

On the 24th January, 1895,—the date of the note from said G. A. Watts to complainants for said indebtedness,—said Watts was the joint owner or tenant in common with C. H. Miller and E. R. Bradford of 760 acres of land described in the bill; and on the 9th February, 1895, this tract of land was voluntarily partitioned among said tenants in common, in the manner described in the 4th section of the bill,—each having set apart to him one-third of the land in value. Watts and Bradford quitclaimed to Miller, Watts and Miller to Bradford, and the three, at the instance and request of Watts, executed a quitclaim deed to M. E. Watts, the wife of said G. A. Watts. The lands, as the answers and evidence show, had been purchased by the three tenants in common from McIntosh & Rich, for the sum of $1,000, who conveyed them jointly to the three parties above named, — Miller, Bradford, and Watts. The deed from Watts, Miller and Bradford to Mrs. M. E. Watts, was executed by them to her for the recited consideration of $333.33. The averments of the bill in respect to this consideration are: "And orators aver, that with the intent to hinder, delay or defraud his creditors, among whom were your orators, the said G. A. Watts executed the deed, a copy of which is hereto attached, marked Exhibit A, and prayed to be taken as a part hereof, and caused the said C. H. Miller, who is a brother of the said Mary E. Watts, and the said E. R. Bradford to join him in the execution thereof, by which the title to that part of the land set off to him, should be vested in Mary E. Watts, who is the wife of said G. A. Watts; and orators aver, that the consideration expressed in said deed, of $333, was never in

fact paid to the said E. R. Bradford, C. H. Miller and G. A. Watts, or either of them, by the said Mary E. Watts, but that said consideration was fictitious and simulated, and that said deed was without any valuable consideration moving from the said Mary E. Watts, and the only consideration therefor was the release by said G. A. Watts of his interest in the remainder of said lands to the said C. H. Miller and E. R. Bradford." The averment is also made, that at the time of the execution of said deed to his wife, said Watts was financially embarrassed, and was largely indebted to divers persons, and that all his property subject to levy and sale under execution was not sufficient to pay his debts.

The bill seeks to have said deed set aside as being in fraud of existing creditors, and the lands subjected to the payment of complainants' debt.

The chancellor rendered his decree granting the relief prayed, and ordering a reference to ascertain the amount of complainants' debt.

The defendant filed their answers, substantially the same, and admitted indebtedness of said G. A. Watts to complainants; they denied the allegations of fraud set up in the bill, and that said deed was made to hinder and delay the creditors of the said Watts.

The averments of the answer of Mrs. Watts, as to the consideration of the conveyance of McIntosh & Rich to said Miller, Bradford and Watts are, "that E. R. Bradford and C. H. Miller, each, furnished $333.33 of the $1,000 described in said Exhibit B (McIntosh & Rich's deed), and that your respondent furnished to the said G. A. Watts $333.33 of the said purchase money used in purchasing said lands described in said Exhibit B; and respondent avers, that when she furnished to the said G. A. Watts the said $333.33, as his part to be paid upon said lands, she did so with the distinct understanding and agreement that there should be a partition of said lands, and that the part that was to be set off to the said G. A. Watts should be deeded to your respondent, and it was with this distinct understanding and agreement that the said G. A. Watts obtained the said $333.33 from your respondent. Respondent

further avers, that the said purchase money used by the said (Watts) in purchasing the said lands described in Exhibit B, as his part, to-wit, $333.33, was a part of your respondent's separate estate."

It will be seen that this is but a scant reply to the averments of the bill charging fraud in the execution of said conveyance by the husband and others at his instance, to his wife. In cases of this character, as is well settled, the presumption is that the consideration moved from the husband, and to overcome this presumption the wife, the grantee in the conveyance, must affirmatively show that the consideration moved from her, that she paid the purchase money with her own funds, and not with the funds of her husband, directly or indirectly.—*Kelley v. Connell*, 110 Ala. 543; *First Nat. Bank v. Smith*, 93 Ala. 97. In respect to the averments in the answer, to raise a proper issue of fact, it is said in *Robinson v. Moseley*, 93 Ala. 70, that "The laboring oar was upon the defendant, not simply to deny the negative averment, that there was no consideration,  *  *  *  but to state the affirmative fact, that there was such consideration, in what it consisted, and how it was paid, and to support these averments by evidence. Otherwise the answer does not apprise the complainant of the line of defense which will be resorted to, nor afford him that opportunity for preparation to meet it which is a leading purpose of all pleading, and which the complainant is always entitled to with respect to a matter of defense affirmative in character, and relied on to defeat and overturn a *prima facie* case made by the bill and admissions of the answer."—*Wood v. Riley*, 121 Ala. 100; *Bangs v. Edwards*, 88 Ala. 382; *Harrell v. Mitchell*, 61 Ala. 270.

Now in this case, the respondent, Mrs. Watts, in respect to the consideration of the deed to her of these lands, simply avers, in substance, that she furnished the money to her husband with which to make the payment for the lands, which,—to repeat her language,— "was a part of your respondent's separate estate." The averment should, properly, have been fuller as to her ability to pay, and whence she derived it,—what separate estate she had, its nature, extent and how held, and the revenue derived from it. Nothing of the kind is

22

stated in her answer, or in that of her husband. She
contents herself with the bare statement, that the pay-
ment was made from her separate estate. Waiving
this, however, she is not more definite in her evidence.
She is unable to say, although requested to do so,
whether she paid it to her husband in gold, silver or cur-
rency. She says: "I borrowed some money from N.
B. Boyles. [But this fact is contradicted by Boyles.]
The purchase money was not paid through N. B. Boyles.
I got the start of the money paid for the land from
my father. I got the start of the money, when I first
got married (in 1871). I did not keep it long before
I bought things, and made money with money. I kept
my money at home. It was part in gold, silver, and
greenbacks. I gave the money to G. A. Watts, when
the time came to purchase the land. I do not know
how much of it was gold. I do not remember how much
of it was silver. I do not know how much of it was
currency. I can't tell how long I had it. I got it
from my father—the start of it. I had never loaned
any of it to G. A. Watts." Her husband's testimony
is contradictory and inconsistent with itself, and with
these statements of his wife. He says: "The land in
controversy was bought partly for cash and partly on
time. Mrs. M. E. Watts furnished the money  *  *  *
She furnished the money at the time it was paid. This
money was kept by Mrs. Watts in her business. There
were two payments made, a part in a check and a part
in money. This is my best recollection. Mrs. Watts
gave me the money at the time she made the payments.
*  *  *  I did not borrow any money from N. B. Boyles
in 1894. I do not remember whether I got a draft from
N. B. Boyles in November, 1894, or not, and sent the
draft to McIntosh & Rich to pay on the land. The money
was obtained by depositing some notes with N. B.
Boyles.  *  *  *  Mrs. Watts got seven or eight head
of cattle from her father. I do not remember the exact
number."

C. E. Suddeth, examined for defendants, stated, as
touching Mrs. Watts' separate estate, that "Mrs. M. E.
Watts kept a little commissary store, sold soap, tobacco,

snuff, sugar, coffee and flour. Mrs. Watts had a separate estate prior to, and on the 9th February, 1894." This witness fails to state, for whom Mrs. Watts kept the store,—for herself and with her own capital, or for her husband and with his money. Nor does he state in what her separate estate consisted, how much it was, and whence derived.

N. B. Boyles, engaged in the mercantile business in years 1894-1896, at Thomasville, testified for plaintiffs: "I am acquainted with Mr. Watts' wife. I did not have any business transactions with Mrs. Watts in 1894 or 1895. All my business transactions were with G. A. Watts. I never extended any credit to Mrs. M. E. Watts during said years. I never furnished Mrs. Watts any money to buy lands from McIntosh & Rich of Mobile. I only knew of a tract of land bought by Mr. Watts from McIntosh & Rich, from what he told me, himself. He told me he had bought a tract from them. G. A. Watts approached me in the Fall of 1894, for the purpose of obtaining money to purchase the said lands. He said he, Mr. Miller, and Mr. Bradford had bought some lands together, and he wanted the money to pay for his part of it. I let him have the money to pay for his interest in the land. * * * The money was paid to Mr. Watts for the purchase of the land by a check which was drawn in my name by Mr. Tucker in favor of McIntosh & Rich on D. R. Burgess & Co., Mobile, Ala. I have the draft in my posesssion, while I am testifying and it is hereto attached, marked Exhibit A." The draft was dated, Thomasville, 12-1st., 1894, was on D. R. Burgess & Co., Mobile, payable at sight, for $166.66, indorsed "McIntosh & Rich, Paid Dec'r 14, 1894. D. R. Burgess & Co." The witness further testified that he advanced another sum of money,— $166.67,—to G. A. Watts in the Spring of 1894, which was charged to the account of said G. A. Watts with him. He also produced and proved the correctness of an account of his with said G. A. Watts, for the years 1893—1897, which was introduced in evidence by defendants. In this account there appears two items, one of April 5th, 1894, and the other of November 30th, 1894, one for the sum of $166.67, and the other," amount

paid D. R. Burgess & Co.," for $166.66, making the sum of $333.33. As to these items the witness testified: "The item of April 5th in the account for 1894, is the amount I then furnished Mr. Watts to buy the land. The said item of November 30th, 1894, represents the same amount and transaction, and second amount drawn as payment on land."

J. W. Tucker, who was the book-keeper for Boyles, testified to the same things substantially as Boyles did. He says, that he had a conversation with G. A. Watts in 1894, with reference to the purchase by him, Miller and Bradford of the lands from McIntosh & Rich, when he stated, that he wanted the money from Mr. Boyles to make his payment. He testified to the two items of April 5th, in cash, and the other, in the draft to McIntosh & Rich, aggregating $333.33.

It will be seen from this resumé of the evidence, as to the one fact,—whether as averred in the bill, the lands in question were purchased by G. A. Watts with his money, and were afterwards conveyed without consideration to his wife; or whether, as set up in the answers, they were purchased and paid for with the money of Mrs. Watts,—that the burden being upon the respondents to clearly and fully prove that she paid for the property with her separate funds, they have failed to sustain this burden.

It is unnecessary to consider the other alternate grounds for relief set up in the bill.

Affirmed.